United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GREGORY NICHOLAS STESHENKO,

                  Plaintiff,

    v.

SUZANNE GAYRARD, et al.,

                  Defendants.

)
)
)
)
)
)
)
)
)
)

Case No.: 13-CV-03400-LHK

ORDER GRANTING MOTION TO DISMISS

Plaintiff Gregory Nicholas Steshenko ("Plaintiff") brings this action for age discrimination based on not being admitted to two graduate programs at San Jose State University. Defendants Suzanne Gayrard, Tzvina Abramson, and the Board of Trustees of the California State University (collectively, "Defendants") move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 12 ("Mot."). The Court held a hearing on this motion on May 15, 2014. Having considered the parties' briefs and arguments, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' Motion to Dismiss.

## I.      BACKGROUND

Plaintiff is a 51-year-old unemployed electrical engineer seeking to re-enter the job market through a professional re-training. ECF No. 1 ("Compl.") at ¶ 10. In addition to a Master of Science degree in Electrical Engineering, Plaintiff earned a Bachelor of Science degree in Biochemistry and Molecular Biology from the University of California, Santa Cruz, in 2010. *See id*. at ¶¶ 10, 15.

1

United States District Court
For the Northern District of California

On November 23, 2012, Plaintiff applied to the Clinical Laboratory Scientist ("CLS") Training Program at San Jose State University.  Compl. ¶ 15.  The CLS Training Program is a one-year academic program combining theoretical training with an internship at a participating clinical laboratory.  *Id.* at ¶ 11.  On January 25, 2013, Plaintiff was notified that his application was denied and that he would not be invited for an interview.  *Id.* at ¶ 16.  According to Plaintiff, much younger applicants, in their 20s, with much more inferior academic credentials and work experience, were invited for interviews and subsequently admitted to the program.  *Id.*  Plaintiff alleges that he personally knew some of these applicants and observed how they "struggled" while taking the prerequisites for the program.  *Id.*  Plaintiff later raised these issues with the head of the CLS Training Program, Defendant Suzanne Gayrard.  *Id.*  However, Gayrard refused to explain the admission decision or to inform Plaintiff about the age statistics of the admitted applicants.  *Id.*  Accordingly, Plaintiff concluded that he was discriminated on the grounds of age.  Compl. at ¶ 17.  Plaintiff subsequently filed a complaint with the U.S. Department of Education Office of Civil Rights ("USDOE").  *Id.*

On February 3, 2013, Defendant Tzvia Abramson, the head of the Stem Cell Internships in Laboratory Based Learning ("SCILL") Program, invited Plaintiff to apply to the SCILL Program.  Compl. at ¶ 18.  The SCILL Program is a two-year Master of Science program with a year of theoretical training and a year of an internship at a participating research laboratory.  *Id.* at ¶ 12.  On February 28, 2013, Plaintiff applied to the SCILL Program.  *Id.* at ¶ 18.

According to Plaintiff, after Abramson contacted Gayrard and learned about Plaintiff's complaint to the USDOE, Abramson, Gayrard, and other university employees formed a conspiracy to retaliate against Plaintiff for his complaint.  Compl. ¶ 19.  On May 3, 2013, Abramson notified Plaintiff that he was not selected as "a finalist for this round," but that Plaintiff is on a waiting list for Fall 2013.  *Id.* at ¶ 20.  Abramson also stated that she will not provide any information about Plaintiff's ranking on that waiting list.  *Id.*  However, according to Plaintiff, there was no such thing as a waiting list and that the SCILL Program had been "struggling to find the minimally qualified students willing to apply."  *Id.*  Plaintiff alleges that all of the admitted

applicants to the SCILL Program were young, and "their academic credentials were much inferior to those of Plaintiff." *Id.*

On June 10, 2013, Plaintiff notified Gayrard that Plaintiff will file a lawsuit against Gayrard. *Id.* at ¶ 21. According to Plaintiff, "Defendants decided to retaliate further" by denying Plaintiff's admission to graduate studies at San Jose State University's Department of Biological Sciences. *Id.*

Plaintiff alleges that the CLS Training Program, the SCILL Program, and the participating laboratories "heavily discriminate on the grounds of age." Compl. at ¶ 14. Plaintiff further alleges: "No persons of the protected age have ever been admitted to either of [the CLS Training or the SCILL] programs. The age discrimination is rampant." *Id.*

Plaintiff alleges that he has exhausted his administrative remedies with the USDOE on June 29, 2013. Compl. ¶ 7. Plaintiff also alleges that he filed "several timely administrative claims with California State University Chancellor's Office." Compl. ¶ 8. However, Plaintiff's claims were denied. *Id.*

On July 22, 2013, Plaintiff filed a Complaint against Defendants. ECF No. 1. On October 22, 2013, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6). ECF No. 12. After the Court granted the parties' motions to extend time to file a response to the Motion to Dismiss, on January 23, 2014, Plaintiff filed an Opposition. ECF No. 26. On January 24, 2014, Plaintiff filed an addendum to his Opposition. ECF No. 28. On January 31, 2014, Defendants filed a Reply. ECF No. 29. The Court held a hearing on May 15, 2014. Plaintiff filed a supplemental letter brief on May 16, 2014. ECF No. 35.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

3

1    (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

2    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability

4    requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."

5    *Id*. (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, a court

6    "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

7    most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

8    1025, 1031 (9th Cir. 2008).  Moreover, pro se pleadings are to be construed liberally.  *Resnick v.*

9    *Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[I]n general, courts must construe pro se pleadings

10   liberally.").

11           However, a court need not accept as true allegations contradicted by judicially noticeable

12   facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look

13   beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

14   motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

15   Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in

16   the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

17   curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

18   "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

19   dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); accord *Iqbal*, 556 U.S. at 678.

20   Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

21   [s]he cannot prevail on h[er] . . . claim."  *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

22   1997) (internal quotation marks omitted).

23       **B.       Leave to Amend**

24           If the Court determines that the complaint should be dismissed, it must then decide whether

25   to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

26   "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

27   of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

28   technicalities."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

**United States District Court**
For the Northern District of California

1    marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should

2    grant leave to amend even if no request to amend the pleading was made, unless it determines that

3    the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (quoting *Doe*

4    *v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Furthermore, the Court "has a duty to ensure

5    that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance

6    of technical procedural requirements." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th

7    Cir. 1990).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue

8    delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

9    amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of

10   amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010)

11   (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

12   **III.    DISCUSSION**

13          Plaintiff's Complaint asserts nine causes of action against Defendants, but groups them into

14   the following five causes of action: (1) age discrimination in violation of the Age Discrimination

15   Act of 1975 ("ADA"), Age Discrimination in Employment Act of 1967 ("ADEA"), and California

16   Fair Employment and Housing Act ("FEHA"); (2) retaliation for speech in violation of the First

17   Amendment to the U.S. Constitution pursuant to 42 U.S.C. § 1983 ("Section 1983") and §52.1 of

18   the California Civil Code ("Bane Act"); (3) denial of due process and equal protection rights under

19   the Fourteenth Amendment pursuant to Section 1983 and the Bane Act; (4) conspiracy to interfere

20   with civil rights pursuant to 42 U.S.C. § 1985(3) ("Section 1985(3)"); and (5) intentional infliction

21   of emotional distress ("IIED").  *See* Compl. at 7-9.

22          Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) on the ground that

23   Plaintiff's Complaint fails to state any claims upon which relief can be granted.  *See* Mot. at 4-15.

24   Specifically, Defendants contend that: (1) the Eleventh Amendment to the United States

25   Constitution is a complete bar to all of Plaintiff's claims against Defendant Board of Trustees of

26   the California State University, Mot. at 4-8;[1] and (2) each of Plaintiff's claims against Defendants

---

[1] Ninth Circuit cases have held that dismissal based on Eleventh Amendment immunity should be
analyzed under Rule 12(b)(6) and not as a jurisdictional issue under Rule 12(b)(1).  *See Elwood v.*
*Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (stating that "dismissal based on Eleventh

1   Gayrard and Abramson fail because (a) Defendants Gayrard and Abramson cannot be individually

2   liable, and (b) Plaintiff has not pled sufficient facts to constitute a claim.  Mot. at 9-15.  For the

3   reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's Complaint.

    **A.      Defendant Board of Trustees of the California State University**

5        Defendants argue that the Eleventh Amendment to the United States Constitution is a

6   complete bar to all claims against Defendant Board of Trustees of the California State University

7   ("Board of Trustees").  Mot. at 4.

8        The Eleventh Amendment provides:

9        The Judicial power of the United States shall not be construed to extend to any suit in law
         or equity, commenced or prosecuted against one of the United States by Citizens of another
10       State, or by Citizens or Subjects of any Foreign State.

11   U.S. Const. Amend. XI.

12   Essentially, the Eleventh Amendment erects a general bar against federal lawsuits brought against a

13   state.  *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).  "The Eleventh Amendment bars suits

14   which seek either damages or injunctive relief against a state, an 'arm of the state,' its

15   instrumentalities, or its agencies."  *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995)

16   (citation omitted).  The Board of Trustees is an arm of the state of California and thus the Board of

17   Trustees may invoke the Eleventh Amendment immunity.  *Stanley v. Trs. of the Cal. State Univ.*,

18   433 F.3d 1129, 1133 (9th Cir. 2006) (noting that the Ninth Circuit has previously held that the

19   Trustees of the California State University "are an arm of the state that can properly lay claim to

20   sovereign immunity") (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350-51 (9th Cir. 1982)).

21        State immunity under the Eleventh Amendment is not absolute, however, as there are three

22   exceptions to the rule: (1) Congress may abrogate that immunity pursuant to its lawmaking powers

23   conferred by the United States Constitution, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000);

24   ──────────────────────────
     Amendment immunity is not a dismissal for lack of subject matter jurisdiction, but instead rests on
     an affirmative defense.") (quotation marks and citation omitted); *Tritchler v. Cnty. of Lake*, 358
25   F.3d 1150, 1153-54 (9th Cir. 2004) (stating that "Eleventh Amendment immunity does not
     implicate a federal court's subject matter jurisdiction in any ordinary sense and that it should be
26   treated as an affirmative defense.") (internal quotation marks omitted); *Miles v. Cal.*, 320 F.3d 986,
     988-89 (9th Cir. 2003) (ruling that "dismissal based on Eleventh Amendment immunity is not a
27   dismissal for lack of subject matter jurisdiction") (citing *Hill v. Blind Indus. and Servs. of Md.*, 179
     F.3d 754, 762 (9th Cir. 1999) (concluding that the Eleventh Amendment is not a jurisdictional bar
28   because it is a defense that can be waived by the state)).

Case No.: 13-CV-03400-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

1 (2) the state may waive its Eleventh Amendment immunity by consenting to suit, *College Sav.*

2 *Bank Florida v. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); and (3)

3 under the *Ex parte Young* doctrine, immunity does not apply when the plaintiff chooses to sue a

4 state official in his or her official capacity for prospective injunctive relief, *Seminole Tribe of Fla.*

5 *v. Florida*, 517 U.S. 44, 73 (1996).

6       Here, Plaintiff attempts to avoid the bar of the Eleventh Amendment by invoking the *Ex*

7 *parte Young* doctrine exception against the Board of Trustees.  Plaintiff clarifies that he is only

8 pleading a claim of injunctive relief against the Board of Trustees as allowed by the *Ex parte*

9 *Young* doctrine.  Compl. ¶ 4 (stating that "The Eleventh Amendment permits citizens of any state

10 to seek an injunction or other form of equitable relief against the state in federal court to 'end a

11 continuing violation of federal law'" and citing *Ex parte Young*, 209 U.S. 123 (1908)); Opp'n at 3

12 ("Plaintiff is suing the Trustees of the California State University for injunctive relief only.").  For

13 the reasons set forth below, the *Ex parte Young* doctrine exception does not apply to Plaintiff's

14 claims against the Board of Trustees, and the Court GRANTS Defendants' Motion to Dismiss all

15 of Plaintiff's claims against the Board of Trustees.

16         **1.**    ***Ex parte Young* doctrine**

17       While the Eleventh Amendment erects a general bar against federal lawsuits brought

18 against a state, the Eleventh Amendment does not bar actions for prospective declaratory or

19 injunctive relief against state officers in their official capacities for their alleged violations of

20 federal law.  *See Ex parte Young*, 209 U.S. at 155-56.  The exception to Eleventh Amendment

21 immunity recognized in *Ex parte Young* "is based in part on the premise that sovereign immunity

22 bars relief against States and their officers in both state and federal courts, and that certain suits for

23 declaratory or injunctive relief against state officers must therefore be permitted if the Constitution

24 is to remain the supreme law of the land."  *Alden v. Maine*, 527 U.S. 706, 747 (1999).

25       As an initial matter, the *Ex parte Young* exception applies only where the state officials are

26 allegedly violating federal law; it does not reach suits seeking relief against state officials for

27 violations of state law.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)

28 (stating that "when a plaintiff alleges that a state official has violated state law," "the entire basis

Case No.: 13-CV-03400-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

1    for the doctrine . . . disappears"). Accordingly, the *Ex parte Young* doctrine does not exempt from

2    Eleventh Amendment immunity Plaintiff's state law claims—FEHA claim, Bane Act claim, and

3    IIED claim—against the Board of Trustees. Thus, the Eleventh Amendment bars Plaintiff's state

4    law claims against the Board of Trustees.

5          With respect to Plaintiff's federal law claims, Defendants argue that the *Ex parte Young*

6    doctrine is inapplicable when a claim is asserted against a state or state agency, as opposed to

7    against a state official. Mot. at 8. According to Defendants, the Board of Trustees "is the State and

8    is not a state official" and thus the *Ex parte Young* doctrine does not apply. *See id.*

9          In *Ex parte Young*, the Supreme Court recognized that a "suit challenging the

10   constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at

11   103. Courts have held that a board of trustees is not a state official acting in its official capacity

12   and thus the *Ex parte Young* doctrine does not apply to claims against a board of trustees. *See, e.g.*,

13   *Eubank v. Leslie*, 210 Fed. Appx. 837, 844-45 (11th Cir. 2006) (stating "The University of

14   Alabama Board of Trustees is a state agency, not a state official acting in its official capacity . . .

15   [h]ence, the exception to 11th Amendment immunity set out in Ex parte Young does not apply to

16   claims against it[.]"). In the instant case, Plaintiff has named the Board of Trustees as a defendant.

17   Thus, because the Board of Trustees is not a state official acting in its official capacity, the *Ex*

18   *parte Young* doctrine does not apply, and the Eleventh Amendment bar remains in effect.

19         Plaintiff, however, argues that "the question of whether or not the board members are

20   public officials is irrelevant" because "[t]he California State University itself requires the legal

21   claims against the University designate the Board of Trustees as the defendant." Opp'n at 5.

22   However, Plaintiff cites no authority for that proposition. Plaintiff also cites a First Circuit case for

23   the proposition that "[a] suit against a public official in his official capacity is a suit against the

24   government entity itself." Opp'n at 5 (citing *Suprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005)).

25   However, the *Suprenant* court did not make that statement in the context of the *Ex parte Young*

26   doctrine or the Eleventh Amendment. Rather, that statement was made in the context of

27   unconstitutional conditions of confinement under the Eighth Amendment and Fourteenth

28   Amendment. Thus, *Suprenant* is inapposite.

8

**United States District Court**
For the Northern District of California

1   Because the *Ex parte Young* doctrine does not apply to state law claims and federal claims

2   against a board of trustees, all of Plaintiff's claims against the Board of Trustees remain barred by

3   the Eleventh Amendment.  Accordingly, all of Plaintiff's claims against the Board of Trustees are

4   dismissed.  Plaintiff, however, may invoke the other exceptions to Eleventh Amendment immunity.

5   Thus, the dismissal is without prejudice.

6   **B.       Defendants Gayrard and Abramson**

7   Plaintiff asserts federal and state law claims against Defendants Gayrard and Abramson in

8   their individual capacities.  Compl. ¶ 5.  Plaintiff seeks damages against Gayrard and Abramson.

9   Compl. at 9.  For the reasons set forth below, the Court concludes that Plaintiff fails to state a claim

10  for violations of federal law against Gayrard and Abramson.  Having reached this conclusion, the

11  Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

12  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's claims as to Gayrard

13  and Abramson.

14  **1.       Age Discrimination Act of 1975 ("ADA") Claim**

15  Plaintiff alleges that Gayrard and Abramson violated the Age Discrimination Act of 1975

16  ("ADA") by denying Plaintiff admission to the CLS Training Program and SCILL Program

17  because of Plaintiff's age.  Compl. ¶¶ 24-25.  Defendants, however, argue that the ADA does not

18  authorize recovery of monetary damages and that Gayrard and Abramson are not the proper

19  defendants in ADA actions.  Mot. at 9-10.

20  Under the ADA, "no person in the United States shall, on the basis of age, be excluded

21  from participation in, be denied the benefits of, or be subjected to discrimination under, any

22  program or activity receiving Federal financial assistance."  42 U.S.C. § 6102.  The ADA,

23  however, does not authorize the recovery of monetary damages as to individual defendants.

24  *Rasmussen v. State DMV*, No. CV 08-1604-FMC (PLA), 2008 U.S. Dist. LEXIS 120895, at *14-15

25  n.3 (C.D. Cal. Nov. 25, 2008) (citing *Montalvo-Padilla v. University of Puerto Rico*, 498 F. Supp.

26  2d 464, 468 (D.P.R. 2007) (noting that the private cause of action created by the Age

27  Discrimination Act "is limited to injunctive relief and the recovery of attorney's fees") and *Tyrrell*

28  *v. City of Scranton*, 134 F. Supp. 2d 373, 383 (M.D. Pa. 2001) ("the [Act] cannot support an action

9

1    for damages")).  Thus, Plaintiff may not seek monetary damages from individual defendants such

2    as Gayrard and Abramson under the ADA.

3          Plaintiff argues that the cases above are distinguishable because "the circumstances of

4    [those] cases are very different (employment discrimination v. educational discrimination that

5    precludes employment)[.]"  Opp'n at 6.  However, Plaintiff does not explain how the cases are

6    "very different" and how the purported factual distinction changes the *Rasmussen*, *Montalvo-*

7    *Padilla*, and *Tyrrell* courts' holdings.  Indeed, Plaintiff concedes in his Opposition that "the net

8    effect of both is the same: denial of employment."  *Id*.  Plaintiff also argues that it would be

9    "highly illogical" for the ADEA to authorize damages while the ADA does not.  *See id*.  Plaintiff,

10   however, does not offer any authority to support his argument.  Absent any authority otherwise, the

11   Court will follow the courts in *Rasmussen*, *Montalvo-Padilla*, and *Tyrrell* and also hold that the

12   ADA does not authorize recovery for money damages.  Thus, Plaintiff may not seek monetary

13   damages from Gayrard and Abramson under the ADA.

14         Defendants also argue that the ADA's enforcement provision, Section 6104(e), "make[s]

15   clear that the only proper defendants are the 'program or activity receiving Federal financial

16   assistance.'"  Mot. at 10.  While the Ninth Circuit has not addressed whether an individual

17   defendant can be held liable under the ADA for attorneys' fees or injunctive relief, a review of the

18   relevant provisions of the ADA demonstrates that Plaintiff cannot maintain an ADA claim against

19   Gayrard and Abramson.  As set forth above, the ADA prohibits a "program or activity" receiving

20   federal financial assistance from discriminating against a person because of that person's age.  42

21   U.S.C. § 6102.  "Program or activity" is defined to include a college, university, or other

22   postsecondary institution, or a public system of higher education.  *See* 42 U.S.C. § 6107(4)(B)(i).

23   Because school employees are not included in that definition, and because school employees do not

24   "receive federal financial assistance," Gayrard and Abramson are not the proper defendants under

25   the ADA.

26         Moreover, courts have held that claims may not be asserted against school employees in

27   their individual capacities under statutes with similar language directing similar prohibitions to a

28   "public entity" and "any program or activity receiving Federal financial assistance."  For example,

United States District Court
For the Northern District of California

1   under the Americans with Disabilities Act, "no qualified individual with a disability shall, by

2   reason of such disability, be excluded from participation in or be denied the benefits of the

3   services, programs, or activities of a public entity, or be subjected to discrimination by any such

4   entity." 42 U.S.C. § 12132. School officials, however, may not be held liable under the Americans

5   with Disabilities Act because they are neither a "public entity" nor a "federal recipient." *Stassart v.*

6   *Lakeside Joint Sch. Dist.*, No. 09-1131 JF, 2009 U.S. Dist. LEXIS 104971, at *39 (N.D. Cal. Sept.

7   29, 2009) (dismissing plaintiff's claim against the school superintendent, in his individual capacity,

8   because the school superintendent is neither a "public entity" nor a "federal recipient."). Plaintiff

9   does not cite to any contrary authority to demonstrate that school officials such as Gayrard and

10  Abramson may be liable in their individual capacities under the ADA. Indeed, Plaintiff neglects to

11  address this argument in his Opposition.

12          Accordingly, Plaintiff may not sue Gayrard and Abramson individually under the ADA.

13  Because Plaintiff cannot allege additional facts to cure this deficiency, the Court dismisses

14  Plaintiff's ADA claim against Gayrard and Abramson with prejudice.

15              **2.      Age Discrimination in Employment Act of 1967 ("ADEA") Claim**

16          Plaintiff also alleges that Gayrard and Abramson violated the ADEA by denying Plaintiff

17  admission to the CLS Training Program and SCILL Program because of Plaintiff's age. Compl. ¶¶

18  24-25. Plaintiff alleges that "both programs have dual characteristics of an educational setting and

19  temporary work" and thus the ADEA applies. *Id.* at ¶ 25. Plaintiff explains that "[e]ven if the

20  Court finds that the program is either purely educational or purely constituted work, the age

21  discrimination was unlawful under [either the ADA or ADEA]." *Id.* Defendants, however, argue

22  that individual defendants have no liability under the ADEA statutory scheme, and thus claims

23  against Gayrard and Abramson in their individual capacities may be properly dismissed for failure

24  to state a claim. Mot. at 9.

25          The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any

26  individual or otherwise discriminate against any individual . . . because of such individual's age."

27  29 U.S.C. § 623(a)(1). In *Miller v. Maxwell, Int'l*, the Ninth Circuit held that individual defendants

28  cannot be held liable for damages under the ADEA. 991 F.2d 583, 587-88 (9th Cir. 1993). The

Ninth Circuit reasoned that the statutory scheme itself indicated that Congress did not intend to impose individual liability on employees. *Id.* at 587. "ADEA limits liability to employers with twenty or more employees, 29 U.S.C. § 630(b), in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims. If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.* Here, Defendants Gayrard and Abramson are not employers; they are individual employees of San Jose State University. Compl. ¶ 3. Thus, Gayrard and Abramson cannot be held liable under the ADEA.

Plaintiff appears to contend that *Miller* was incorrectly decided and, in support, cites a 1995 law review article, which criticizes the holding in *Miller*. Opp'n at 5-6, Ex. A (Employment Discrimination-Miller v. Maxwell, International, Inc: Individual Liability for Supervisory Employees Under Title VII and ADEA, 17 W. New Eng. L. Rev., 143 (1995)). However, Ninth Circuit case law—not law review articles—bind this Court. Therefore, the Court will follow *Miller*.

Moreover, in Plaintiff's Addendum to his Opposition, Plaintiff cites to *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986), for the proposition that individual employees are liable under the ADEA. Addendum to Opp'n at 3. However, the *Jones* court did not address individual liability under the ADEA. Rather, the *Jones* court emphasized that individuals may be liable for violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. 789 F.2d at 1231 (stating that "the law is clear that individuals may be held liable for violations of § 1981 . . . and as 'agents' of an employer under Title VII"). Accordingly, Plaintiff's reliance on *Jones* is misplaced.

Accordingly, Gayrard and Abramson cannot be held individually liable under the ADEA, and Plaintiff's ADEA claim against Gayrard and Abramson is dismissed. Because Plaintiff cannot allege any additional facts that would cure the deficiency of Plaintiff's ADEA claim as to Gayrard and Abramson, the Court dismisses with prejudice.

        **3.**        **42 U.S.C. § 1983 ("Section 1983") Claim (Retaliation for Speech and Denial of Equal Protection and Due Process)**

1    "Section 1983 does not create any substantive rights, but is instead a vehicle by which

2    plaintiffs can bring federal constitutional and statutory challenges to actions by state and local

3    officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix,*

4    *Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir.2004) (internal quotation marks omitted)).  The statute's

5    purpose "is to deter state actors from using the badge of their authority to deprive individuals of

6    their federally guaranteed rights."  *Id.* (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir.

7    2000)).

8        Plaintiff alleges that Gayrard and Abramson violated 42 U.S.C. § 1983 ("Section 1983") by

9    retaliating against Plaintiff after Plaintiff exercised his speech rights under the First Amendment.

10   Compl. ¶¶ 26-28.  Plaintiff also alleges that Gayrard and Abramson violated Section 1983 by

11   "violating Plaintiff's rights to equal protection of the laws and to due process of law under the

12   Fourteenth Amendment" by denying Plaintiff "professional re-training," "access to employment,"

13   and "graduate education."  Compl. ¶¶ 29-30.  The Court discusses each alleged violation in turn.

14                    **a.        Retaliation for Speech**

15       Defendants argue that Plaintiff's Section 1983 claim fails because Plaintiff fails to

16   demonstrate a nexus between the retaliation and Plaintiff's exercise of protected speech.  Mot. at

17   10.  Essentially, Defendants argue that Plaintiff "pleads nothing more than a temporal relationship"

18   between the adverse action and Plaintiff's protected speech.  *Id.* at 10-11.

19       A plaintiff may assert a Section 1983 claim where a plaintiff alleges retaliation by state

20   actors for the exercise of the plaintiff's First Amendment rights.  *See Mt. Healthy City Sch. Bd. of*

21   *Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977).  In order to sustain a Section 1983 claim of

22   retaliation in violation of the First Amendment, the plaintiff must allege sufficient facts

23   demonstrating a nexus between the adverse action by the defendant and the plaintiff's protected

24   speech.  *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest

25   on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").

26       Here, Plaintiff fails to allege more than a temporal relationship between the adverse action

27   by Gayrard and Abramson and Plaintiff's speech.  Plaintiff alleges that after Plaintiff filed a

28   complaint with the USDOE, "Abramson, Gayrard, and other SJSU employees formed a conspiracy

United States District Court
For the Northern District of California

1    to retaliate [against] Plaintiff for his [USDOE] complaint."  Compl. ¶¶ 17 and 19.  Plaintiff further

2    alleges that Gayrard and Abramson retaliated by denying Plaintiff's admission to the SCILL

3    Program and to San Jose State University.  Compl. ¶ 27.

4         These conclusory allegations, however, are inadequate to allege that a conspiracy to

5    retaliate against Plaintiff existed.  *See Twombly*, 550 U.S. at 567-67 ("an allegation of parallel

6    conduct and a bare assertion of conspiracy" are insufficient to plead antitrust conspiracy); *Burns v.*

7    *County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (a Section 1983 plaintiff "must state specific

8    facts to support the existence of the claimed conspiracy"); *see also Gressett v. Contra Costa*

9    *County*, No. C-12-3798 EMC, 2013 U.S. Dist. LEXIS 70667, at *44-45 (N.D. Cal., May 17, 2013)

10   ("Whether a plaintiff has alleged sufficient facts to show a conspiracy is generally a case[-]specific,

11   fact-intensive inquiry. Courts look to a variety of factors, such as whether the plaintiff has set forth

12   facts from which a motive can be inferred, facts showing acts taken in furtherance of the

13   conspiracy, and facts showing specific agreement to be part of a conspiracy.").

14        Plaintiff fails to allege additional specific facts regarding the alleged conspiracy, including:

15   (1) a specific agreement between Gayrard, Abramson, and university employees; (2) the scope of

16   the conspiracy; (3) the role of Gayrard, Abramson, and the university employees in the conspiracy;

17   and (4) when and how the conspiracy operated.  *See Lacey v. Maricopa*, 693 F.3d 896, 937 (9th

18   Cir. 2012) (conspiracy allegations insufficient when plaintiff did not plead the scope of the

19   conspiracy, what role the defendant had, or when and how the conspiracy operated).  Thus,

20   Plaintiff fails to allege sufficient facts demonstrating a nexus between Plaintiff's complaint to the

21   USDOE and Plaintiff's denial of admission to the SCILL Program and the university.

22        Because Plaintiff's failure to allege a causal nexus between Plaintiff's speech and Gayrard

23   and Abramson's adverse action is sufficient grounds to dismiss a Section 1983 retaliation claim,

24   the Court need not address Defendants' other arguments.  Accordingly, Plaintiff's Section 1983

25   claim against Gayrard and Abramson for retaliation is dismissed.  Plaintiff may, however, allege

26   additional facts to cure the deficiencies identified above.  Therefore, the Court dismisses with leave

27   to amend.

28                    **b.    Denial of Equal Protection and Due Process**

14

United States District Court
For the Northern District of California

1    Defendants argue that Plaintiff's ADA and ADEA claims foreclose Plaintiff's Section 1983

2    claim for alleged violations of Plaintiff's equal protection and due process rights under the

3    Fourteenth Amendment because the ADA and ADEA provide the exclusive remedies for claims of

4    age discrimination.  *See* Mot. at 12-13.

5        An alleged violation of federal law may not be vindicated under Section 1983 where

6    "Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly

7    by imbuing it with its own comprehensive remedial scheme."  *Vinson v. Thomas*, 288 F.3d 1145,

8    1155 (9th Cir. 2002) (citations omitted).  "When the remedial devices provided in a particular Act

9    are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude

10   the remedy of suits under § 1983."  *Middlesex Co. Sewerage Auth. v. National Sea Clammers*

11   *Ass'n*, 453 U.S. 1, 20 (1981)).  When Congress has created so many specific statutory remedies,

12   "[i]t is hard to believe that Congress intended to preserve the § 1983 right of action."  *Id.*  Thus,

13   "the existence of these express remedies demonstrates not only that Congress intended to foreclose

14   implied private actions but also that it intended to supplant any remedy that otherwise would be

15   available under § 1983."  *Id.* at 21.  "The provision of an express, private means of redress in the

16   statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive

17   remedy under § 1983."  *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005).  "To

18   preclude enforcement under section 1983, the Act's remedial scheme must be so comprehensive as

19   to leave no room for additional private remedies."  *Buckley v. City of Redding*, 66 F.3d 188, 193

20   (9th Cir. 1995).

21       In *Ahlmeyer v. Nev. Sys. of Higher Educ.*, the Ninth Circuit found that the ADEA "provides

22   a comprehensive remedial scheme."  555 F.3d 1051, 1060 (9th Cir. 2009).  Thus, the Ninth Circuit

23   held that "the ADEA precludes the assertion of age discrimination in employment claims, even

24   those seeking to vindicate constitutional rights, under § 1983."  *Id.* at 1057.  Specifically, the Ninth

25   Circuit found the following ADEA remedial scheme comprehensive:

26       A prerequisite to the bringing of a private action is that the Equal Employment
         Opportunity Commission (EEOC) must be given sixty days notice. 29 U.S.C. §
27       626(d). This period is designed to give the EEOC time to mediate the grievance "by
         informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b).

28

15

1

2
> The right to commence a private action, it should be noted, terminates upon the filing of an action by the EEOC. 29 U.S.C. § 626(c). Finally, notification to the EEOC must be given within 180 days after the alleged unlawful actions took place, unless the party is also seeking state relief. 29 U.S.C. § 626(d)(1).

3

*Id*. at 1056 n.4 (citation omitted).  Thus, Plaintiff's Section 1983 claim alleging age discrimination

4

in employment in violation of the Fourteenth Amendment is foreclosed.  The Court dismisses

5

Plaintiff's Section 1983 claim based on age discrimination in employment with prejudice because

6

any amendment would be futile.

7

The Court next addresses Plaintiff's Section 1983 claim alleging age discrimination by a

8

program or activity receiving federal financial assistance in violation of the Fourteenth

9

Amendment.  Defendants note that there are no known cases—and the Court has not found any—

10

that address whether the ADA's remedial scheme is sufficiently comprehensive to preclude Section

11

1983 claims.  However, in determining whether the ADA created a private cause of action against a

12

federal agency or its employees for failure to remedy an alleged violation of the ADA, the Third

13

Circuit found that the ADA contains a comprehensive remedial scheme.  *See Sindram v. Fox*, 374

14

Fed. Appx. 302, 305 (3d. Cir. 2010) ("Congress also created a comprehensive remedial scheme

15

that does not include a cause of action against a federal agency or its employees.").  To determine

16

whether the ADEA's remedial scheme precludes Section 1983 actions, the Ninth Circuit in

17

*Ahlmeyer* stated that "courts must analyze the comprehensiveness of a statute" and the statute's

18

"corresponding preclusion of other remedies" to determine whether the statute should be read as

19

precluding Section 1983 actions.  555 F.3d at 1060.

20

The ADA provides the following remedial scheme.  Under Section 6102, "no person in the

21

United States shall, on the basis of age, be excluded from participation in, be denied the benefits of,

22

or be subjected to discrimination under, any program or activity receiving Federal financial

23

assistance." 42 U.S.C. §§ 6102.  Funding agencies have the authority to promulgate regulations to

24

carry out the provisions of Section 6102 and to provide "appropriate investigative, conciliation, and

25

enforcement procedures."  42 U.S.C. §§ 6103(a)(1)(4).  The agency can "seek to achieve

26

compliance" with its regulations "by terminating, or refusing to grant or to continue, assistance

27

under the program or activity."  42 U.S.C. § 6104(a)(1).

28

16

In addition to agency oversight and enforcement, the ADA also provides beneficiaries with an administrative remedy and judicial remedy.  Beneficiaries who believe a recipient is violating Section 6102 can file an administrative complaint with the relevant agency.  42 U.S.C. § 6104(f). If, after 180 days, the agency either takes no action or finds in favor of the recipient, the beneficiary can seek to "enjoin a violation of [the ADA] by any program or activity receiving Federal financial assistance." 42 U.S.C. § 6104(e)(1),(f).  Notably, the Section 6104(c) private cause of action allows a court to enjoin a violation of Section 6102.  The above provisions expressly provide for a method of enforcing the rights created by the ADA; suggesting that Congress intended to preclude other methods of enforcement.  *Alexander v. Sandoval*, 532 U.S. 275, 290 (U.S. 2001) (stating that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

Based on the U.S. Supreme Court's decision in *Middlesex* and the Ninth Circuit's decision in *Ahlmeyer*, the Court finds that the ADA's remedial scheme is sufficiently comprehensive to foreclose Section 1983 claims alleging age discrimination in violation of the Fourteenth Amendment by a program or activity receiving federal financial assistance.  This finding is consistent with the Ninth Circuit's recent decision in *Okwu v. McKim*, 682 F.3d 841, 844-46 (9th Cir. 2012), which found that the remedial scheme of the Americans with Disabilities Act was sufficiently comprehensive to foreclose Section 1983 claims based on disability discrimination. Accordingly, Plaintiff's Section 1983 claim alleging age discrimination in violation of the Fourteenth Amendment by a program or activity receiving federal financial assistance is dismissed with prejudice because amendment would be futile.

### 4.    Section 1985(3) Claim

Plaintiff alleges that Gayrard and Abramson conspired to interfere with Plaintiff's civil rights pursuant to 42 U.S.C. § 1985(3) ("Section 1985(3)").  Compl. ¶¶ 31-33.  Defendants argue that this claim should be dismissed because Plaintiff has not pled specific facts from which a conspiracy can be plausibly inferred under Section 1985(3).  Mot. at 13-15.

Section 1985(3) prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws[.]"  *See* 42 U.S.C. §

17

1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971).  A claim for violation of Section

1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy.  *Holgate*

*v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529,

1536 (9th Cir. 1992)).  A mere allegation of conspiracy is insufficient to state a claim.  *Id.* at 676-

77.  Allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain

other actions of the alleged conspirators taken to achieve that purpose," *Marchese v. Umstead*, 110

F. Supp. 2d 361, 371 (E.D. Pa. 2000), and allegations that identify "which defendants conspired,

how they conspired and how the conspiracy led to a deprivation of . . . constitutional rights,"

*Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir.1997), have been held to be sufficiently particular

to properly allege a conspiracy.

As set forth above, Plaintiff's conclusory allegations that Gayrard and Abramson conspired

to retaliate against Plaintiff are insufficient to allege that a conspiracy to retaliate against Plaintiff

existed.  *See Twombly*, 550 U.S. at 567-67 ("an allegation of parallel conduct and a bare assertion

of conspiracy" are insufficient to plead antitrust conspiracy).  Plaintiff has not alleged sufficient

specific facts regarding the alleged conspiracy, including: (1) a specific agreement between

Gayrard, Abramson, and university employees; (2) the scope of the conspiracy; (3) the role of

Gayrard, Abramson, and the university employees in the conspiracy; (4) when and how the

conspiracy operated; and (5) whether the denial of Plaintiff's admission to the SCILL Program and

the university was an act in furtherance of that conspiracy  *See Lacey*, 693 F.3d at 937.

Because Plaintiff fails to allege additional facts from which a conspiracy can be plausibly

inferred under Section 1985(3), Plaintiff's Section 1985(3) claim is dismissed as to Gayrard and

Abramson.  Plaintiff, however, may allege additional facts to cure the deficiencies identified above.

As such, the Court dismisses with leave to amend.

### 5.     Plaintiff's Remaining State Law Claims (FEHA Claim, Bane Act Claim, and IIED Claim)

Because the parties in this case are non-diverse, *see* Compl. ¶¶ 2-3, the now-dismissed

federal law claims provide the sole bases for federal subject matter jurisdiction in this case.  While

a federal court may exercise supplemental jurisdiction over state law claims "that are so related to

18

United States District Court
For the Northern District of California

1   claims in the action within [the court's] original jurisdiction that they form part of the same case or

2   controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may

3   decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has

4   original jurisdiction," 28 U.S.C. § 1367(c)(3); *see also Albingia Versicherungs A.G. v. Schenker*

5   *Int'l, Inc.,* 344 F.3d 931, 937-38 (9th Cir. 2003) (Section 1367(c) grants federal courts the

6   discretion to dismiss state-law claims when all federal claims have been dismissed).  A court, in

7   considering whether to retain supplemental jurisdiction, should consider factors such as "economy,

8   convenience, fairness, and comity," *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en

9   banc) (internal quotation marks omitted).  However, "in the usual case in which all federal-law

10  claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise

11  jurisdiction over the remaining state law claims."  *Exec. Software N. Am., Inc. v. U.S. Dist. Court*,

12  24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal.*

13  *Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

14          Here, the balance of factors weighs in favor of dismissing Plaintiff's remaining state law

15  claims.  This case has yet to proceed beyond the pleadings, and thus few judicial resources are

16  wasted by dismissing the case at this stage.  Further, dismissal promotes comity by allowing the

17  California courts to interpret state law concerning the state law claims in the first instance.  Thus,

18  the Court declines to exercise supplemental jurisdiction over the remaining state law claims—

19  FEHA claim, Bane Act claims, and IIED claim—in Plaintiff's Complaint.  *See Ove v. Gwinn*, 264

20  F.3d 817, 826 (9th Cir. 2001) (court may decline to exercise supplemental jurisdiction over related

21  state-law claims under subsection (c)(3) once it has dismissed all claims over which it has original

22  jurisdiction.)

23          Accordingly, because the Court declines to exercise supplemental jurisdiction as to

24  Plaintiff's state law claims, Plaintiff's state law claims against Gayrard and Abramson are

25  dismissed.

26  **IV.     CONCLUSION**

27          For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss, as follows:

28

Case No.: 13-CV-03400-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

(1) The Court GRANTS Defendants' motion to dismiss Plaintiff's claims against the Board of Trustees with leave to amend;

(2) The Court GRANTS Defendants' motion to dismiss Plaintiff's ADA claim against Gayrard and Abramson with prejudice;

(3) The Court GRANTS Defendants' motion to dismiss Plaintiff's ADEA claim against Gayrard and Abramson with prejudice;

(4) The Court GRANTS Defendants' motion to dismiss Plaintiff's Section 1983 retaliation claim against Gayrard and Abramson with leave to amend;

(5) The Court GRANTS Defendants' motion to dismiss Plaintiff's Section 1983 claim based on due process and equal protection violations against Gayrard and Abramson with prejudice;

(6) The Court GRANTS Defendants' motion to dismiss Plaintiff's Section 1985(3) claim against Gayrard and Abramson with leave to amend; and

(7) The Court GRANTS Defendants' motion to dismiss Plaintiff's state law claims—FEHA claim, Bane Act claims, and IIED claim.

Should Plaintiff elect to file an amended complaint addressing the deficiencies discussed herein, Plaintiff shall do so within 14 days of the date of this Order.  Plaintiff may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  Plaintiff's failure to meet the 14-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice.

**IT IS SO ORDERED.**

Dated: May 20, 2014

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

20