United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREGORY NICHOLAS STESHENKO, | ) Case No.: 13-CV-03400-LHK |
| Plaintiff, | ) ORDER GRANTING IN PART AND |
| v. | ) DENYING IN PART MOTION TO |
| SUZANNE GAYRARD, et al., | ) DISMISS |
| Defendants. | ) |

Plaintiff Gregory Nicholas Steshenko ("Plaintiff") brings this action for age discrimination and retaliation based on not being admitted to three graduate programs at San Jose State University. Defendants Suzanne Gayrard, Tzvina Abramson, and the Board of Trustees of the California State University (collectively, "Defendants") move to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 46. Having considered the parties' briefs and arguments, the relevant law, and the record in this case, the Court hereby GRANTS Defendants' motion to dismiss.

## I.      BACKGROUND

Plaintiff is a 52-year-old unemployed electrical engineer seeking to re-enter the job market through professional re-training. FAC ¶ 51. In addition to a Master of Science degree in Electrical Engineering, Plaintiff earned a Bachelor of Science degree in Biochemistry and Molecular Biology from the University of California, Santa Cruz, in 2010. *See id.*

1

1    On November 23, 2012, Plaintiff applied to the Clinical Laboratory Scientist ("CLS")

2    Training Program at San Jose State University.  *Id.* ¶ 57.  The CLS Training Program is a one-year

3    academic program combining theoretical training with an internship at a participating clinical

4    laboratory.  *Id.* ¶ 52.  On January 25, 2013, Plaintiff was notified that his application was denied

5    and that he would not be invited for an interview.  *Id.* ¶ 59.  According to Plaintiff, much younger

6    applicants, in their 20s, with much more inferior academic credentials and work experience, were

7    invited for interviews and subsequently admitted to the program.  *Id.*  Plaintiff alleges that he

8    personally knew some of these applicants and observed how they "struggled" while taking the

9    prerequisites for the program.  *Id.*  Plaintiff later raised these issues with the head of the CLS

10   Training Program, Defendant Suzanne Gayrard.  *Id.*  However, Gayrard refused to explain the

11   admission decision or to inform Plaintiff about the age statistics of the admitted applicants.  *Id.*

12   Accordingly, Plaintiff concluded that he was discriminated against on the grounds of age.  *Id.*

13   Plaintiff subsequently filed a complaint with the U.S. Department of Education Office of Civil

14   Rights ("USDOE").  *Id.* ¶ 60.

15       On February 3, 2013, Defendant Tzvia Abramson, the head of the Stem Cell Internships in

16   Laboratory Based Learning ("SCILL") Program, invited Plaintiff to apply to the SCILL Program.

17   *Id.* ¶ 61.  The SCILL Program is a two-year Master of Science program with a year of theoretical

18   training and a year of an internship at a participating research laboratory.  *Id.* ¶ 53.  On February

19   28, 2013, Plaintiff applied to the SCILL Program.  *Id.* ¶ 61.

20       According to Plaintiff, after Abramson contacted Gayrard and learned about Plaintiff's

21   complaint to the USDOE, Defendants Abramson, Gayrard, and other university employees[1] formed

22   a conspiracy to retaliate against Plaintiff for his complaint.  Specifically, the defendants

23   "communicated and agreed that Plaintiff should not be invited for the SCILL admissions interview

24

---

25   [1] In the First Amended Complaint, Plaintiff names "other university employees" including CLS
     Admissions Committee members Sabine Rech and Michael Sneary and SCILL Admissions
26   Committee members John Boothby and Katherine Wilkinson as additional defendants.  ECF No.
     26 at 1.  In the Court's previous order granting Defendant's motion to dismiss with leave to amend,
27   Plaintiff was cautioned that Plaintiff may not add new parties without leave of the Court or a
     stipulation by the parties pursuant to Federal Rule of Civil Procedure 15(a).  ECF No. 42 at 20.
28   The Court had thus far not granted leave nor have the parties stipulated to the addition of any new
     defendants. The new defendants are therefore dismissed from this action.

1    because of his complaints and his expressed intention to sue." *Id.* ¶ 62.  On May 3, 2013,

2    Abramson notified Plaintiff that he was not selected as "a finalist for this round," but that Plaintiff

3    was on a waiting list for Fall 2013.  *Id.* ¶ 63.  Abramson also stated that she would not provide any

4    information about Plaintiff's ranking on that waiting list.  *Id.*  However, according to Plaintiff,

5    there was no such thing as a waiting list and the SCILL Program had been "struggling to find . . .

6    minimally qualified students willing to apply."  *Id.*  Plaintiff alleges that all of the admitted

7    applicants to the SCILL Program were young, and "their academic credentials were much inferior

8    to those of Plaintiff."  *Id.*

9         On June 10, 2013, Plaintiff notified Gayrard that Plaintiff would file a lawsuit against

10    Gayrard.  *Id.* ¶ 64.  According to Plaintiff, "Defendants decided to retaliate further" by denying

11    Plaintiff's admission to graduate studies at San Jose State University's Department of Biological

12    Sciences.  *Id.*

13         Plaintiff alleges that the CLS Training Program, the SCILL Program, and the participating

14    laboratories "heavily discriminate on the grounds of age."  *Id.* ¶ 56.  Plaintiff further alleges:  "No

15    persons of the protected age have ever been admitted to either of [the CLS Training or the SCILL]

16    programs.  The age discrimination is rampant."  *Id*.

17         Plaintiff alleges that he exhausted his administrative remedies with the USDOE on June 29,

18    2013.  *Id.* ¶ 7.  Plaintiff also alleges that he filed "several timely administrative claims with

19    California State University Chancellor's Office."  ECF No. 46 at 3.  However, Plaintiff's claims

20    were denied.  *Id.* ¶ 8.

21         On July 22, 2013, Plaintiff filed his original Complaint against Defendants.  ECF No. 1.

22    On October 22, 2013, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6).  ECF No. 12.

23    After the Court granted the parties' motions to extend time to file a response to the motion to

24    dismiss, on January 23, 2014, Plaintiff filed an Opposition.  ECF No. 26.  On January 24, 2014,

25    Plaintiff filed an addendum to his Opposition.  ECF No. 28.  On January 31, 2014, Defendants filed

26    a Reply.  ECF No. 29.  The Court held a hearing on May 15, 2014.  ECF No. 36.  Plaintiff filed a

27    supplemental letter brief on May 16, 2014.  ECF No. 35.

28

1   On May 20, 2014, the Court granted Defendants' motion to dismiss.  ("May 20, 2014

2   Order"), ECF No. 42.  In the order, the Court granted Defendants' motion to dismiss Plaintiff's

3   claims against the Board of Trustees; Plaintiff's § 1983 retaliation claim against Gayrard and

4   Abramson; and Plaintiff's § 1985(3) claim against Gayrard and Abramson with leave to amend.

5   May 20, 2014 Order at 20.  The Court also granted Defendants' motion to dismiss Plaintiff's

6   § 1983 claim based on due process and equal protection violations against Gayrard and Abramson;

7   Plaintiff's Age Discrimination Act claim against Gayrard and Abramson; and Plaintiff's Age

8   Discrimination in Employment Act claim against Gayrard and Abramson with prejudice.  *Id.*

9   Finally, the Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state

10  law claims and thus granted Defendants' motion to dismiss Plaintiff's state law claims—FEHA

11  claim, Bane Act claims, and IIED claim.  *Id.* at 18–20.

12  On May 31, 2014, Plaintiff filed a First Amended Complaint ("FAC") against Defendants.

13  ECF No. 45.  On June 1, 2014, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6).

14  ("MTD"), ECF No. 49.  On June 29, 2014, Plaintiff filed a Response. ECF No. 51. On July 10,

15  2014, Defendants filed a Reply.  ECF No. 53.

16  **II.      LEGAL STANDARD**

17      **A.      Motion to Dismiss Under Rule 12(b)(6)**

18  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

19  short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

20  that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

21  12(b)(6).  The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to

22  state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

23  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

24  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability

26  requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."

27  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, a court

28  "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light

4

1   most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

2   1025, 1031 (9th Cir. 2008).  Moreover, pro se pleadings are to be construed liberally.  *Resnick v.*

3   *Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[I]n general, courts must construe pro se pleadings

4   liberally.").

5      However, a court need not accept as true allegations contradicted by judicially noticeable

6   facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look

7   beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

8   motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

9   Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in

10  the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

11  curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

12  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

13  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

14  Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

15  [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

16  1997) (internal quotation marks omitted).

17    **B.**  **Leave to Amend**

18     If the Court determines that the complaint should be dismissed, it must then decide whether

19  to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

20  "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

21  of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

22  technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

23  marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should

24  grant leave to amend even if no request to amend the pleading was made, unless it determines that

25  the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (quoting *Doe*

26  *v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Furthermore, the Court "has a duty to ensure

27  that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance

28  of technical procedural requirements." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th

United States District Court
For the Northern District of California

1    Cir. 1990).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue

2    delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

3    amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of

4    amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010)

5    (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

6    **III.    DISCUSSION**

7          Plaintiff's FAC asserts six causes of action against Defendants which can be grouped into

8    the following five categories: (1) age discrimination in violation of the Age Discrimination Act of

9    1975; (2) retaliation for speech in violation of the First Amendment to the U.S. Constitution

10   pursuant to 42 U.S.C. § 1983; (3) denial of due process and equal protection rights under the

11   Fourteenth Amendment pursuant to § 1983; (4) conspiracy to interfere with civil rights pursuant to

12   42 U.S.C. § 1985(3); and (5) intentional infliction of emotional distress ("IIED").  *See* FAC ¶¶ 67–

13   79.

14         Defendants move to dismiss Plaintiff's FAC under Rule 12(b)(6) on the ground that

15   Plaintiff's Amended Complaint fails to state any claims upon which relief can be granted.  *See*

16   MTD at 10–26.  Specifically, Defendants contend that: (1) the Eleventh Amendment to the United

17   States Constitution is a complete bar to all of Plaintiff's claims against Defendant Board of

18   Trustees of the California State University, *Id.* at 13–19;[2] and (2) each of Plaintiff's claims against

19   Defendants Gayrard and Abramson fail because Plaintiff has not pled sufficient facts to constitute a

20   claim.  *Id.* at 19–25.  For the reasons set forth below, the Court GRANTS IN PART and DENIES

21   IN PART Defendants' motion to dismiss Plaintiff's FAC.

22   _____

23   [2] Ninth Circuit cases have held that dismissal based on Eleventh Amendment immunity should be
     analyzed under Rule 12(b)(6) and not as a jurisdictional issue under Rule 12(b)(1).  *See Elwood v.*
24   *Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (stating that "dismissal based on Eleventh
     Amendment immunity is not a dismissal for lack of subject matter jurisdiction, but instead rests on
25   an affirmative defense") (quotation marks and citation omitted); *Tritchler v. Cnty. of Lake*, 358
     F.3d 1150, 1153–54 (9th Cir. 2004) (stating that "Eleventh Amendment immunity does not
26   implicate a federal court's subject matter jurisdiction in any ordinary sense and that it should be
     treated as an affirmative defense") (internal quotation marks omitted); *Miles v. California*, 320
27   F.3d 986, 988–89 (9th Cir. 2003) (ruling that "dismissal based on Eleventh Amendment immunity
     is not a dismissal for lack of subject matter jurisdiction") (citing *Hill v. Blind Indus. and Servs. of*
28   *Md.*, 179 F.3d 754, 762 (9th Cir. 1999) (concluding that the Eleventh Amendment is not a
     jurisdictional bar because it is a defense that can be waived by the state)).

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

### A.      Defendant Board of Trustees of the California State University

Defendants argue that the Eleventh Amendment to the United States Constitution is a complete bar to all claims against Defendant Board of Trustees of the California State University ("Board of Trustees").[3]  MTD at 4.  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.

Essentially, the Eleventh Amendment erects a general bar against federal lawsuits brought against a state.  *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies."  *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (citation omitted).  The Board of Trustees is an arm of the state of California and thus the Board of Trustees may invoke the Eleventh Amendment immunity.  *Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) (noting that the Ninth Circuit has previously held that the Trustees of the California State University "are an arm of the state that can properly lay claim to sovereign immunity"); *see Jackson v. Hayakawa*, 682 F.2d 1344, 1350–51 (9th Cir. 1982).

State immunity under the Eleventh Amendment is not absolute, however, as there are three exceptions to the rule: (1) Congress may abrogate that immunity pursuant to its lawmaking powers conferred by the United States Constitution, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000); (2) a state may waive its Eleventh Amendment immunity by consenting to suit, *College Sav. Bank Florida v. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); and (3) under the *Ex parte Young* doctrine, immunity does not apply when the plaintiff chooses to sue a state official

---

[3] In the FAC, Plaintiff names California State University as an additional defendant.  FAC ¶ 4.  In the Court's previous order granting Defendant's motion to dismiss with leave to amend, Plaintiff was cautioned that Plaintiff may not add new parties without leave of the Court or a stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  May 20, 2014 Order at 18.  The Court had thus far not granted leave nor have the parties stipulated to the addition of any new defendants.  The Court therefore dismisses California State University from this action.  Furthermore, even if the Court were to grant leave to add new parties, the addition of this party would not alter the Court's decision in this matter as California State University is a state agency.  *See Mitchell v. Los Angeles Comm. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    in his or her official capacity for prospective injunctive relief, *Seminole Tribe of Fla. v. Florida*,

2    517 U.S. 44, 73 (1996).

3         Here, Plaintiff attempts to avoid the bar of the Eleventh Amendment in two ways. First,

4    Plaintiff attempts to invoke the *Ex parte Young* doctrine exception against the Board of Trustees.

5    Second, Plaintiff asserts that the Board of Trustees waived its sovereign immunity as to Age

6    Discrimination Act suits by accepting conditional federal funds.

7         In this Court's previous order granting Defendants' motion to dismiss, the Court decided

8    that the *Ex parte Young* doctrine does not apply to state law claims and federal claims against a

9    board of trustees.  *See* May 20, 2014 Order at 7–9.   The Court again concludes that the Board of

10   Trustees is not a "state official" under *Ex parte Young* and is therefore not subject to suit under that

11   doctrine.  *See, e.g.*, *Eubank v. Leslie*, 210 F. Appx. 837, 844–45 (11th Cir. 2006) ("The University

12   of Alabama Board of Trustees is a state agency, not a state official acting in its official capacity . . .

13   [h]ence, the exception to 11th Amendment immunity set out in *Ex parte Young* does not apply to

14   claims against it[.]").  Accordingly, the Court will only address Plaintiff's waiver argument.[4]

15        For the reasons set forth below, the Court finds that Plaintiff sufficiently alleges facts

16   supporting the claim that the Board of Trustees waived its sovereign immunity under the Age

17   Discrimination Act of 1975 by accepting federal educational funds.  The Court therefore DENIES

18   Defendants' motion to dismiss Plaintiff's Age Discrimination Act claim against the Board of

19   Trustees.

20              **1.       Age Discrimination Act**

21        While the Eleventh Amendment erects a general bar against federal lawsuits brought

22   against a state, a state may affirmatively choose to waive that immunity.  *See Atascadero St. Hosp.*

23   *v. Scanlon*, 473 U.S. 234, 238 (1985), *abrogated in part by, Lane v. Pena*, 518 U.S. 184, 198–200

24

25   _____

     [4] Plaintiff again argues that the California State University requires him to name the Board of
26   Trustees, and only the Board of Trustees, as a defendant.  *See* May 20, 2014 Order at 7–8; Opp'n at
     8; FAC ¶ 4.  In support of this proposition, he attaches a print-out of the University General
27   Counsel's webpage.  However, the webpage notes only that "[i]ndividual campuses are not
     separate legal entities . . ." and otherwise provides that "[t]he Office of General Counsel is
28   authorized to accept service of process on behalf of the Board of Trustees, individually named
     Trustees, the Chancellor, and/or the campus Presidents . . . ."  The Court rejects Plaintiff's
     argument.

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

(1996).  More specifically, Congress may require a state to waive its sovereign immunity as a condition of receiving federal funds.  *See, e.g.*, *Lawrence Cnty. v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256, 269–70 (1985) ("It is far from a novel proposition that pursuant to its powers under the Spending Clause, Congress may impose conditions on the receipt of federal funds, absent some independent constitutional bar."); *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) ("A sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court.").

Congress has conditioned receipt of federal funds for certain "program[s] and activit[ies]" upon a state's waiver of sovereign immunity.  *See* 42 U.S.C. § 2000d-4a.  Section  2000d-7 states:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

By voluntarily accepting federal funds covered by this explicit "equalization" provision, a state waives its sovereign immunity.  *See Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812 (9th Cir. 2001) ("[S]tates are subject to suit in federal court under the Rehabilitation Act if they accept[] federal Rehabilitation Act funds"); *Clark v. California*, 123 F.3d 1267, 1271 (9th Cir. 1997) ("[T]he Rehabilitation Act manifests a clear intent to condition a state's participation on its consent to waive its Eleventh Amendment immunity."); *see also Litman v. George Mason Univ.*, 186 F.3d 544, 554 (4th Cir. 1999) ("[T]he plain meaning of § 2000d-7(a)(1) . . . is, by accepting Title IX funding, a state agrees to waive its Eleventh Amendment immunity.").  *But see Sossamon v. Texas*, 131 S. Ct. 1651, 1662–63 (2011) (rejecting expansive interpretation of the residual clause).

Plaintiff correctly notes that § 2000d-7 is an unambiguous waiver of a state's sovereign immunity.  *Lane*, 518 U.S. at 200 (noting "the care with which Congress responded to [the] decision in *Atascadero* by crafting an unambiguous waiver of the States' Eleventh Amendment immunity in [42 U.S.C. § 2000d–7]").  Plaintiff alleges that the Board of Trustees is a recipient of federal funding and is therefore subject to the equalization provision of the Rehabilitation Act Amendments of 1986.  FAC ¶¶ 11–16.  The Board does not deny the University's receipt of federal

9

**United States District Court**
For the Northern District of California

1    funds, and on a motion to dismiss the Court takes Plaintiff's allegation of federal funding as true.

2    *See Manzarek*, 519 F.3d at 1031.  On its face, the FAC adequately alleges that the Board of

3    Trustees voluntarily waived its sovereign immunity to Plaintiff's claims under the Age

4    Discrimination Act by accepting federal educational funds.[5]

5          Defendants rely on *Douglas v. California Department of Youth Authority* and *Lovell v.*

6    *Chandler*, 303 F.3d 1039 (9th Cir. 2002), to contend that § 2000d-7 did not waive their sovereign

7    immunity under the Age Discrimination Act.  Defendants argue that § 2000d-7 applies only where

8    a state accepts federal funds provided under a designated act, and that act specifically conditions

9    funds on a waiver of sovereign immunity.  MTD at 7.  They contend that the *Douglas* and *Lovell*

10   decisions rested on the fact that California and Hawaii had accepted funds under the Rehabilitation

11   Act, and that the plaintiffs brought suit pursuant to § 504 of the Rehabilitation Act.  *See Douglas*,

12   271 F.3d at 819; *Lovell*, 303 F.3d at 1051.  From that fact, Defendants extrapolate that they could

13   not have waived their sovereign immunity under the Age Discrimination Act of 1975, because

14   unlike the Rehabilitation Act, the Age Discrimination Act "does not contain any provision

15   providing funding to states to implement the Act."  MTD at 7.  The parties offer no authority

16   addressing this issue in the context of the Age Discrimination Act, and the Court has found no such

17   cases.  However, the Court concludes that Defendants' extrapolation, while superficially appealing,

18   is untenable in light of the statutory text.

19         First, nothing in the plain language of § 2000d-7 distinguishes between actions brought

20   under § 504 of the Rehabilitation Act, Title IX of the Education Amendments ("Title IX"), Title VI

21   of the Civil Rights Act ("Title VI"), and the Age Discrimination Act.  Defendants cite no statutory

22   support for their conclusion that a claim arising under one of these four acts defeats a state's

23   sovereign immunity defense only if the individual act provides federal funding to implement the

24   act itself.  It is true that the Rehabilitation Act does specifically provide federal funding for

25   _____

26   [5] While Defendants do not raise this argument, the Court acknowledges that Plaintiff's allegations could have been more specific.  However, the Court also liberally construes Plaintiff's pro se pleadings and finds that they adequately notify Defendants of the factual basis for his legal allegations against Defendants.  *See Resnick*, 213 F.3d at 447.  Defendants have not denied their receipt of federal funds, or provided any judicially noticeable documents supporting their claim that the University does not receive Department of Education funding subject to the Age Discrimination Act.

27

28

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1     designated programs and activities.  *See* 29 U.S.C. §§ 794b, 794e.  While Defendants correctly

2     note that the Age Discrimination Act does not specifically fund designated programs and activities,

3     they fail to note that neither Title IX nor Title VI specifically fund designated programs or

4     activities.  Rather, the three acts forbid discrimination on the basis of an identified characteristic in

5     any program or activity receiving federal financial assistance.  *See* 42 U.S.C. § 2000d ("No person

6     in the United States shall, on the ground of race, color, or national origin, be excluded from

7     participation in, be denied the benefits of, or be subjected to discrimination under any program or

8     activity receiving Federal financial assistance."); 20 U.S.C. § 1681(a) ("No person in the United

9     States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be

10    subjected to discrimination under any education program or activity receiving Federal financial

11    assistance . . . ."); 42 U.S.C. § 6102 ("Pursuant to regulations . . . and except as [otherwise]

12    provided . . . no person in the United States shall, on the basis of age, be excluded from

13    participation in, be denied the benefits of, or be subjected to discrimination under, any program or

14    activity receiving Federal financial assistance.").  Congress unequivocally expressed its intent to

15    condition receipt of federal assistance on a waiver of sovereign immunity under the Rehabilitation

16    Act, Title IX, Title VI, and the Age Discrimination Act.  *See Clark*, 123 F.3d at 1271.  Under

17    Defendants' theory, Congress's carefully crafted waiver would apply to only one of the four

18    enumerated statutes, because only one provides funding for its own implementation.  The Court

19    finds no statutory support for this overly narrow interpretation and concludes it is contrary to

20    Congress's clearly stated intent.

21          Second, the Court finds that the Age Discrimination Act itself, like Title IX and Title VI,

22    explicitly conditions the receipt of federal educational funding upon a waiver of sovereign

23    immunity.  In addressing § 2000d-7 in the Title IX context, the Fourth Circuit held that the

24    defendant, George Mason University, voluntarily and knowingly waived its sovereign immunity

25    defense by applying for Title IX funding from the Department of Education. *See Litman*, 186 F.3d

26    at 553–54; *see also Pederson v. La. St. Univ.*, 213 F.3d 858, 876 (5th Cir. 2000) ("[I]n 42 U.S.C. §

27    200d-7(a)(a) Congress has successfully codified a statute which clearly, unambiguously, and

28    unequivocally conditions receipt of federal funds under Title IX on the State's waiver of Eleventh

**United States District Court**
For the Northern District of California

1  Amendment Immunity."); *Cherry v. Univ. of Wisc. Sys. Bd. of Regents*, 265 F.3d 541, 555 (7th Cir.

2  2001) ("Thus, we agree with the Fourth and Fifth Circuits that by enacting 42 U.S.C. § 2000d–7(a),

3  Congress clearly and unambiguously manifested its intent to condition the States' receipt of Title

4  IX funds on their waiver of immunity from suit.").  For Title IX, Title VI, and the Age

5  Discrimination Act, the relevant Department of Education regulations require that applicants for

6  federal financial assistance provide a written assurance that the educational programs or activities

7  will be in compliance with the regulations prohibiting discrimination on the basis of sex, race, and

8  age.  *See* 34 C.F.R. § 106.4 (Title IX); 34 C.F.R. § 100.4 (Title VI); 34 C.F.R. § 110.23 (Age

9  Discrimination Act).  These required assurances "unequivocally put [the defendant] on notice" that

10 it may not discriminate on the basis of sex, race, or age, and that it has waived their sovereign

11 immunity defense in a suit brought under these statutes.  *See Litman*, 186 F.3d at 553.  Plaintiff

12 alleges that the University receives federal educational funds.  In light of the Department of

13 Education's regulatory scheme for such federal assistance, the Court infers from Plaintiff's

14 allegation that the Board has allegedly applied for and received federal educational funding that is

15 subject to a written assurance that the University shall not discriminate on the basis of age.  Under

16 this set of alleged facts, the Board of Trustees may not contend it did not voluntarily or knowingly

17 waive its sovereign immunity.

18        Taking Plaintiff's allegation that Defendants receive federal education funding as true, the

19 Court concludes that he has sufficiently pled facts supporting the claim that the Board of Trustees

20 waived its sovereign immunity defense as to his claims under the Age Discrimination Act.  The

21 Court therefore DENIES Defendant's motion to dismiss this claim against the Board of Trustees.

22                    **2.        Section 1983 Claims**

23        In the FAC, Plaintiff brings two claims pursuant to § 1983.  FAC ¶¶ 69–72.  First, Plaintiff

24 brings a claim alleging retaliation for speech in violation of the First Amendment to the U.S.

25 Constitution.  *Id.* ¶ 70.  Second, Plaintiff brings a claim alleging denial of due process and equal

26 protection rights under the Fourteenth Amendment.  *Id.* ¶ 72.  However, Plaintiff fails to allege an

27 exception to Defendant Board of Trustees' sovereign immunity.

28

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    First, Congress did not abrogate states' sovereign immunity for § 1983 claims.  *See*

2  *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17 (1985) ("§ 1983 was not intended to abrogate a

3  State's Eleventh Amendment immunity"); *see also Dittman v. California*, 191 F.3d 1020, 26 (9th

4  Cir. 1999) (same); *Brown v. Cal. Dep't of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (same).

5  Second, Plaintiff does not allege that Defendant Board of Trustees has either waived its sovereign

6  immunity or otherwise consented to this suit.  Third, as discussed above, *Ex parte Young* does not

7  apply to Defendant Board of Trustees.  The Court previously dismissed Plaintiff's § 1983 claims

8  against the Board of Trustees with leave to amend to allow Plaintiff to plead an exception to

9  sovereign immunity.  Plaintiff has failed to do so and any further amendment would be futile.  *See*

10  *Carvalho*, 629 F.3d at 892–93.  Accordingly, the Court GRANTS Defendants' motion to dismiss

11  Plaintiff's § 1983 claims against the Board of Trustees with prejudice.

12                    **3.      Section 1985(3) Claim**

13    Plaintiff also brings a claim under § 1985(3), alleging that the Board of Trustees engaged in

14  a conspiracy to interfere with his civil rights.  FAC ¶ 76.  Like the § 1983 claims dismissed above,

15  Plaintiff's § 1985(3) claim also remains barred by the Eleventh Amendment.  *See Cerrato v. S.F.*

16  *Cmty. College Dist.*, 26 F.3d 968, 972, 976 (9th Cir. 1994) (holding that the Eleventh Amendment

17  bars § 1985 claims brought against a state).  Plaintiff does not claim that Defendant Board of

18  Trustees has waived its sovereign immunity or consented to suit.  Moreover, as discussed above,

19  *Ex parte Young* does not apply to the Board of Trustees.  The Court previously dismissed

20  Plaintiff's § 1985(3) claim against the Board of Trustees with leave to amend to allow Plaintiff to

21  plead an exception to sovereign immunity.   Plaintiff has failed to do so and any further amendment

22  would be futile.  *See Carvalho*, 629 F.3d at 892–93.  As such, the Court GRANTS Defendants'

23  motion to dismiss Plaintiff's § 1985(3) claim with prejudice.

24

25

26

27

28

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*United States District Court*
For the Northern District of California

United States District Court
For the Northern District of California

**B.    Defendants Gayrard and Abramson**

Plaintiff asserts several federal and state law claims against Defendants Gayrard and Abramson (the "individual Defendants").[6]  FAC ¶¶ 16, 21, 23, 36, 41, 50.  The Court addresses each one in turn.

**1.    Age Discrimination Act of 1975 Claim**

In both Plaintiff's original Complaint and FAC, Plaintiff alleges that the individual Defendants violated the Age Discrimination Act of 1975 by denying Plaintiff admission to the CLS Training Program and SCILL Program because of Plaintiff's age.  *See* ECF No. 1 at 7; FAC ¶ 16.

In this Court's previous order granting Defendants' motion to dismiss, the Court held that Plaintiff may not sue the individual Defendants under the Age Discrimination Act and dismissed Plaintiff's claims against the individual Defendants with prejudice.  May 20, 2014 Order at 9–11.  This holding still stands, and thus Plaintiff's claim is dismissed again with prejudice.  Plaintiff may not assert this claim in a second amended complaint.

**2.    First Amendment and Fourteenth Amendment Claims Pursuant to 42 U.S.C. § 1983**

Plaintiff alleges that the individual Defendants violated the First Amendment by retaliating against him after Plaintiff exercised his speech rights.  FAC ¶¶ 62–64.  Plaintiff also alleges that the individual Defendants "violat[ed] Plaintiff's rights to equal protection of the laws and to due process of law under the Fourteenth Amendment" by denying Plaintiff access to "professional re-training," "the job bridge programs," and "graduate education."  FAC ¶ 72.  The Court discusses each alleged violation in turn.

**a.    Retaliation for Protected Activity**

In the Court's previous order, the Court granted Defendant's motion to dismiss with respect to Plaintiff's retaliation claim.  *See* May 20, 2014 Order at 13–14.  In making this determination, the Court found that because Plaintiff "failed to allege a causal nexus between Plaintiff's speech

---

[6] As discussed in footnote 1, Plaintiff also added CLS Admissions Committee members Sabine Rech and Michael Sneary and SCILL Admissions Committee members John Boothby and Katherine Wilkinson as additional defendants to his FAC without leave of Court in contravention of the Court's May 20, 2014 Order.  Those new parties are not proper under Federal Rule of Civil Procedure 15(a) and are therefore dismissed from this action.

14

1    and Gayrard and Abramson's adverse action," the Court had "sufficient grounds to dismiss a

2    Section 1983 retaliation claim." *Id.* at 14.  The Court, however, dismissed the claim with leave to

3    amend to allow Plaintiff the opportunity to allege additional facts to cure the deficiency identified

4    above. *Id.* at 14.

5           As a general matter, a plaintiff asserting a First Amendment violation "must provide

6    evidence showing that 'by his [or her] actions [the defendant] deterred or chilled [the plaintiff's]

7    political speech and such deterrence was a substantial or motivating factor in [the defendant's]

8    conduct.'"  *Mendocino Env'tl Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)

9    (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).  A plaintiff "must allege facts

10   ultimately enabling him [or her] to 'prove the elements of retaliatory animus as the cause of

11   injury,' with causation being 'understood to be but-for causation.'"  *Lacey v. Maricopa Cnty.*, 693

12   F.3d 896, 916–17 (9th Cir. 2012) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also*

13   *Padgett v. City of Monte Sereno*, No. C04-03946, 2007 WL 7758396, at *10 (N.D. Cal. Mar. 20,

14   2007).  Where a plaintiff alleges retaliation in the context of a failure-to-hire claim, a plaintiff must

15   allege that (1) he or she engaged in constitutionally protected activity; (2) the position was

16   eliminated as to him or her; and (3) "the position was eliminated as to [him or] her because of the

17   protected activities."  *Ruggles v. Cal. Polytechnic St. Univ.*, 797 F.2d 782, 785–86 (9th Cir. 1986).

18   "[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to

19   demonstrate that even without the impetus to retaliate [the defendant] would have taken the action

20   complained of . . . ."  *Hartman*, 547 U.S. at 260.

21          Contrary to Defendants' contention, Plaintiff has sufficiently alleged he engaged in

22   protected speech.  Plaintiff alleges he "exercised his First Amendment rights . . . 'to petition the

23   Government for a redress of grievances' when he filed complaints and lawsuits."  MTD at 11; FAC

24   ¶ 38.  Petitioning a government agency or the courts for redress of grievances is an activity

25   protected by the First Amendment.  *See Soranno's Fasco, Inc. v. Morgan*, 874 F.2d 1310, 1314

26   (9th Cir. 1989) ("The right of access to the courts is subsumed under the first amendment right to

27   petition the government for redress of grievances.").  Plaintiff has also alleged an adverse action:

28   the denial of admission to the SCILL and graduate studies program at San Jose State University.

1  FAC ¶¶ 62–64.   However, the factual allegations underlying these two alleged adverse actions are

2  distinct, therefore the Court addresses the causation requirement separately for the denial of

3  admission to the SCILL program and denial of admission to graduate studies at San Jose State

4  University.

**1.      SCILL Program**

6          The Court concludes that Plaintiff has sufficiently alleged facts supporting a casual nexus

7  between his protected activity and his denial of admission to the SCILL program.  In January of

8  2013, Plaintiff filed complaints and notified Gayrard, the head of the CLS program, of his intent to

9  sue after his rejection from the CLS program.  FAC ¶ 5, 59–60.  On February 3, 2013, Defendant

10 Abrahamson, the head of the SCILL program, invited Plaintiff to apply to the SCILL program.

11 FAC ¶ 61.  Plaintiff requested that Abramson contact the CLS office to obtain his

12 recommendations, which Abramson agreed to do.  *Id.*  Then, "[s]ometime in March of 2013,

13 Abramson contacted Gayrard and learned from Gayrard about Plaintiff's complaint, his expressed

14 intent to sue and his prior lawsuit. Sometime during March – April, 2013 period, Defendants . . .

15 communicated and agreed that Plaintiff should not be invited for the SCILL admission interview

16 because of his complaints and his expressed intention to sue."  FAC ¶ 62.  Plaintiff alleges that he

17 "was deemed to be 'litigious,' [and] thus a potential legal threat to their department and their

18 programs."  FAC ¶ 62 n.7.  Upon his rejection from SCILL, Plaintiff further alleges that Abramson

19 notified Plaintiff in May of 2014 that he was on a "waiting list."  FAC ¶ 53.  Plaintiff contends that

20 SCILL has never had a waiting list and that "in fact the program has been struggling to find . . .

21 minimally qualified students willing to apply."  *Id.*

22          These facts are sufficient to allege a temporal and causal relationship between when

23 Abramson first learned of Plaintiff's previous protected activity from Gayrard and Abramson's

24 subsequent decision to reject Plaintiff's application for admission to the SCILL program.  *See, e.g.,*

25 *Padgett*, 2007 WL 7758396, at *11 ("[T]he timing between a plaintiff's criticism of the government

26 and the alleged retaliatory acts can serve as evidence that the government act was retaliatory."); *see*

27 *also Lacey*, 693 F.3d at 917 ("[T]he proof of [retaliatory animus] is clearly found in [defendant's]

28 efforts to have [plaintiffs] arrested the same day the *New Times* published an article critical of

16

**United States District Court**
For the Northern District of California

1  [defendant's] investigation.").  Plaintiff has alleged that it was only after Abramson's discovery of

2  Plaintiff's prior protected activity that Abramson made the decision to deny Plaintiff admission to

3  the SCILL program.  FAC ¶ 62.  Plaintiff has also alleged facts supporting a claim that Abramson

4  offered a pretextual explanation for Plaintiff's rejection.  *See Coszalter v. City of Salem*, 320 F.3d

5  968, (9th Cir. 2003) ("Beyond the bare facts of the timing, plaintiffs in this case provided

6  additional evidence that the defendants' proffered explanation . . . was pretextual. . . . A reasonable

7  fact finder could also find that a pretextual explanation such as this one casts doubt on other

8  explanations that, standing alone, might appear to be true.").  Viewing Plaintiff's allegations in the

9  most favorable light, the Court finds that Plaintiff sufficiently alleges that Abramson misled

10  Plaintiff about the existence of a wait list, and that in light of the program's previous struggles to

11  attract qualified candidates, Plaintiff should have been otherwise admitted.  This raises a

12  reasonable inference that Abramson's decision was substantially motivated by Plaintiff's prior

13  complaints and lawsuits, and that Plaintiff's protected activity was a but-for cause of Abramson's

14  decision.

15        Defendants argue that Plaintiff has failed to show a "but-for" causal nexus between the

16  alleged retaliation and Plaintiff's protected activity.  However, as discussed above, Plaintiff has

17  sufficiently alleged facts supporting his claim that Defendants knowingly and intentionally denied

18  him admission to the SCILL program based on his protected activity.  The procedural posture of

19  this case requires only that Plaintiff "plead a short and plain statement showing a plausible basis for

20  relief."  *See, e.g.*, *Maa v. Ostroff*, No. 12-cv-00200, 2013 WL 5755043, at *11 (N.D. Cal. Oct. 23,

21  2013) (denying motion to dismiss plaintiff's retaliation claim where plaintiff alleged knowledge

22  and a temporal relationship).  Plaintiff has done so here by alleging that Plaintiff's protected

23  activity was a "substantial or motivating factor in the defendant's decision."  *CarePartners, LLC v.*

24  *Lashway*, 545 F.3d 867, 877 (9th Cir. 2008) (quoting *Soranno's Gasco*, 874 F.2d at 1314).

25        Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's retaliation claim

26  against the individual Defendants with regards to the SCILL program.

27

28

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

2.      **Graduate Studies at San Jose State University**

The Court finds that Plaintiff has failed to allege sufficient facts showing a causal nexus between his protected activity and his rejection from the graduate studies program at San Jose State University.  Plaintiff alleges that he received "an invitation from Gayrard to connect with her on LinkedIn, a professional social network."  FAC ¶ 63.  Plaintiff declined and notified Gayrard that he was about to name her in a lawsuit.  *Id.*  "Later that night, Plaintiff received a notification that his admission to graduate studies at SJSU [was] denied by the Department of Biological Sciences." *Id.*  Plaintiff alleges no facts showing that Gayrard, a lecturer in the department, had any decision-making authority in the graduate studies program.  *See* FAC ¶ 5. Plaintiff has not identified which, if any, of the individual Defendants were on the admissions committee for the graduate studies program.  *See id.*  Nor does Plaintiff allege that any of the other individual Defendants learned of his communication with Gayrard, or had any reason to know of his communication.  Instead, Plaintiff relies solely on the fact that he notified Gayrard of his impending suit and that Plaintiff was rejected from the graduate studies program later that evening.  Plaintiff has simply not pled sufficient facts showing a causal nexus between his communication to Gayrard and his rejection from the graduate studies program.  *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's retaliation claim against the individual Defendants with regard to the graduate studies program.  In addition, because Plaintiff "fail[ed] to cure deficiencies by amendments previously allowed," the Court finds that further amendment would be futile and dismisses the claim with prejudice.  *Carvalho*, 629 F.3d at 892–93.

b.      **Denial of Equal Protection and Due Process**

In this Court's previous order granting Defendant's motion to dismiss, the Court dismissed with prejudice Plaintiff's § 1983 claim alleging that Defendants Gayrard and Abramson "violat[ed] Plaintiff's rights to equal protection of the laws and to due process of law under the Fourteenth Amendment" by denying Plaintiff "professional re-training," "access to employment," and

18

United States District Court
For the Northern District of California

1  "graduate education." May 20, 2014 Order at 17. The Court dismissed the claim with prejudice

2  because the Court found that the Age Discrimination Act's remedial scheme is sufficiently

3  comprehensive to foreclose § 1983 claims alleging age discrimination in violation of the

4  Fourteenth Amendment by a program or activity receiving federal financial assistance. Plaintiff re-

5  alleges his equal protection and due process claims. Insofar as those claims rely on age

6  discrimination, the May 20, 2014 Order dismissed those claims with prejudice and Plaintiff's

7  claims are dismissed again with prejudice. Plaintiff may not reassert these claims in a second

8  amended complaint.

9  However, Plaintiff contends that the May 20, 2014 Order did not address his due process

10 claim. FAC ¶ 46. The Court did not address Plaintiff's claim that Defendants deprived Plaintiff of

11 his alleged property interest in "professional retraining" without due process because Plaintiff did

12 not make that allegation in his original Complaint. In his original Complaint, Plaintiff made the

13 bare allegation that Defendants violated his Fourteenth Amendment right to due process without

14 any further explanation. While Plaintiff could not add new claims without leave of Court, the

15 Court declines to treat Plaintiff's newly articulated due process claim as wholly separate from his

16 prior invocation of the Due Process Clause of the Fourteenth Amendment. The Court is mindful of

17 Plaintiff's pro se status and construes his pleadings and briefing liberally. *See Balistreri*, 901 F.2d

18 at 699. The Court therefore gives the Plaintiff the benefit of the doubt and addresses the merits of

19 his due process claim.

20 While Plaintiff's newly articulated due process claim may well be covered by the Court's

21 previous order, the claim as currently alleged does not appear to rely on the Age Discrimination

22 Act.[7] The Court therefore addresses Plaintiff's due process claim below.

23 As a threshold matter, the procedural guarantees of the Due Process Clause of the

24 Fourteenth Amendment apply only when a constitutionally protected liberty or property interest is

25 at stake. *See Johnson v. Rancho Santiago Comm. Coll. Dist.*, 623 F.3d 1011, 1029 (9th Cir. 2010)

26

27 ─────────────────────
   [7] Defendants assume that Plaintiff's due process claim is based on the Age Discrimination Act.
   However, because Plaintiff has claimed a protected property interest in admission to the SCILL,

28 CLS, and graduate studies program, Plaintiff's due process claim appears to be analytically distinct
   from his age discrimination claim.

19

("To succeed on a substantive or procedural due process claim, the plaintiffs must first establish that they were deprived of an interest protected by the Due Process Clause."); *Neal v. Shimoda*, 131 F.3d 818, 827–28 (9th Cir. 1997). In determining whether an interest triggers constitutional protection, the Court must "look not to the 'weight' but to the nature of the interest at state." *Bd. of Regents of St. Colls. v. Roth*, 408 U.S. 564, 570–71 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577; *see also Merritt v. Mackey*, 827 F.2d 1368, 1370–71 (9th Cir. 1987). "Protected property interests are not created by the Constitution[, but r]ather ... they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Johnson*, 623 F.3d at 1030 (9th Cir. 2010) (internal quotation marks omitted). Once a court determines a protected interest is at stake, it applies the three-factor balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) the private interest at stake; (2) the "risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of . . . substitute procedural safeguards"; and (3) the government's interest. *Id.* at 335.

The Court finds that Plaintiff has failed to allege a protected property interest. Plaintiff alleges that "[a]n admission to the taxpayer-funded CSU and professional retraining was the Plaintiff's property that he was deprived of." FAC ¶ 47. However, Plaintiff pleads no facts showing that University regulations, state law, or any other independent source created a legitimate claim of entitlement to admission to the programs. *See Johnson*, 623 F.3d at 1030; *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 366–67 (9th Cir. 1976) ("[T]here must exist rules or understandings which allow the claimant's expectations to be characterized as a legitimate claim of entitlement to (the benefit).") (internal quotation marks omitted). The allegations that Plaintiff had "stellar recommendations" and an "excellent" GPA are insufficient to show that Plaintiff had more than a "unilateral expectation" of admission to the program. FAC ¶ 63. Because Plaintiff has not satisfied the threshold requirement of showing a protected interest, the Court does not reach the question of whether Defendants provided adequate procedural safeguards.

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    While Plaintiff pleads insufficient facts to show any legitimate entitlement to admission to

2    the SCILL, CLS, or graduate studies programs, the Court finds that amendment would not

3    necessarily be futile.  The Court therefore dismisses Plaintiff's due process claim without

4    prejudice.

5    ### 3.    Section 1985(3) Claim

6    In this Court's previous order, the Court granted Defendant's motion to dismiss with

7    respect to Plaintiff's § 1985(3) civil conspiracy claim.  *See* May 20, 2014 Order at 17–18.  In

8    making that determination, the Court found that because Plaintiff failed to "allege additional facts

9    from which a conspiracy can be plausibly inferred under Section 1985(3)," the Court had sufficient

10    grounds to dismiss the Section 1985(3) civil conspiracy claim."  *Id.* at 18.  The Court, however,

11    dismissed the claim with leave to amend to allow Plaintiff the opportunity to allege additional facts

12    to cure the deficiency identified above.  *Id.*  Despite that opportunity, Plaintiff fails to allege any

13    additional facts from which a conspiracy can be plausibly inferred under § 1985(3).

14    In the FAC, Plaintiff alleges that Gayrard, Abramson, and other university employees

15    conspired to interfere with Plaintiff's civil rights pursuant to 42 U.S.C. § 1985(3).  FAC ¶ 76.  In

16    effect, Plaintiff alleges three separate conspiracies.  First, Plaintiff alleges that sometime during

17    December 2012 and January 2013, Gayrard and other university employees "communicated and

18    decided that Plaintiff [was] not suitable for the CLS program because of his age."  *Id.* ¶ 58.

19    Second, Plaintiff alleges that Abramson and other university employees also "agreed that Plaintiff

20    [was] not suitable for an acceptance to SCILL program because of his age."  *Id.* ¶ 62.  Third,

21    Plaintiff alleges that sometime during March or April 2013, defendants Gayrard, Abramson, and

22    other university employees "communicated and agreed that Plaintiff should not be invited for the

23    SCILL admission interview because of his complaints and his expressed intention to sue."  *Id.*

24    Defendants argue that each conspiracy claim should be dismissed because Plaintiff has not pled

25    specific facts from which a conspiracy can be plausibly inferred under § 1985(3).  MTD at 12.  The

26    Court will address each conspiracy in turn.

27    Section 1985(3) prohibits conspiracies "for the purpose of depriving, either directly or

28    indirectly, any person or class of persons of the equal protection of the laws."  *See* 42 U.S.C.

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

§ 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971).  A claim for violation of Section

1985(3) requires "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly,

any person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is

either injured in his person or property or deprived of any right or privilege of a citizen of the

United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *see also Holgate

v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).  As to the second element, a plaintiff must not only

identify a legally protected right, but also "demonstrate a deprivation of that right motivated by

'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

conspirators' action.'" *Sever*, 978 F.2d at 1536 (quoting *Griffin*, 403 U.S. at 102).  The Ninth

Circuit requires "either that the courts have designated the class in question a suspect or quasi-

suspect classification requiring more exacting scrutiny or that Congress ha[ve] indicated through

legislation that the class required special protection." *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th

Cir. 1985).

  A mere allegation of conspiracy is insufficient to state a claim.  *Holgate*, 425 F.3d at 676–

77.  Allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain

other actions of the alleged conspirators taken to achieve that purpose," *Marchese v. Umstead*, 110

F. Supp. 2d 361, 371 (E.D. Pa. 2000), and allegations that identify "which defendants conspired,

how they conspired and how the conspiracy led to a deprivation of . . . constitutional rights,"

*Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir.1997), have been held to be sufficiently particular

to properly allege a conspiracy.

  As to Plaintiff's first and second alleged conspiracies, Plaintiff's allegations that Gayrard

and other university employees decided that Plaintiff was not suitable for acceptance to the CLS

program because of his age and that Abramson and other university employees agreed to reject

Plaintiff's application to SCILL because of his age are insufficient.  *See Twombly*, 550 U.S. at 567

("an allegation of parallel conduct and a bare assertion of conspiracy" are insufficient to plead

antitrust conspiracy).  Plaintiff has not alleged sufficient specific facts regarding the alleged

conspiracy, including: (1) a specific agreement between university employees and Gayrard or

1    Abramson; (2) the scope of the conspiracy; (3) the role of Gayrard, Abramson, and the university

2    employees in the conspiracy; (4) whether the denial of Plaintiff's admission to the CLS or SCILL

3    Programs were in furtherance of that conspiracy; (5) how the conspiracy operated; and (6) at least

4    with respect to the SCILL claim, when the conspiracy operated.  *See Lacey*, 693 F.3d at 937

5    (conspiracy allegations insufficient when plaintiff did not plead the scope of the conspiracy, what

6    role the defendant had, or when and how the conspiracy operated).  Plaintiff's conclusory

7    allegations are insufficient.

8           Moreover, even if Plaintiff had sufficiently pled facts showing the existence of these two

9    conspiracies, his claims are not cognizable under § 1985 because the Age Discrimination Act has

10   its own comprehensive remedial structure. *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442

11   U.S. 366 (1979); *Sauter v. Nevada*, 142 F.3d 445, at *1 (9th Cir. April 23, 1998) (age and disability

12   claims).  Section 1985(3) is a vehicle for enforcing federal rights, but does not actually create any

13   substantive rights.  *Novotny*, 442 U.S. at 372.  Where a statute both creates a right and provides a

14   remedial structure, a plaintiff may not use § 1985(3) to circumvent the statutory enforcement

15   scheme.  *See id.* at 372–78.  As the Court previously found, the Age Discrimination Act has a

16   comprehensive remedial scheme.  *See* May 20, 2014 Order at 15–17.  Because Plaintiff's

17   conspiracy allegations are based on violations of the Age Discrimination Act, which has its own

18   comprehensive enforcement scheme, he may not use § 1985(3) as an alternative mechanism to

19   enforce his rights.

20          As to the Plaintiff's third alleged conspiracy, Plaintiff's allegation that Gayrard, Abramson,

21   and other university employees communicated and agreed that Plaintiff should not be invited for a

22   SCILL interview because of his complaints and his expressed intention to sue is insufficient to

23   allege that a conspiracy existed.  *See Twombly*, 550 U.S. at 567.  As with the first two conspiracies,

24   Plaintiff has not alleged sufficient specific facts showing a conspiracy, including: (1) a specific

25   agreement between Gayrard, Abramson, and the other university employees; (2) the scope of the

26   conspiracy; (3) the role of Gayrard, Abramson, and the university employees in the conspiracy; (4)

27   whether the denial of Plaintiff's admission to the SCILL Program was in furtherance of that

28   conspiracy; and (5) how the conspiracy operated.  *See Lacey*, 693 F.3d at 937.  Moreover, Plaintiff

23

1   has not demonstrated that the alleged conspiracy was motivated by the type of "class-based

2   invidiously discriminatory animus," required by § 1985.  *See Sever*, 978 F.2d at 1536; *Schultz*, 759

3   F.2d at 718.  In *Sever*, the Ninth Circuit rejected a § 1985 claim because the plaintiff's alleged class

4   of "individuals who wish to petition the government" was not a suspect or quasi-suspect group.

5   *See id.* at 1538.  As in *Sever*, Plaintiff's alleged class of "individuals who petition the courts" is not

6   a judicially recognized suspect or quasi-suspect group.  *See also Schultz*, 759 F.2d at 718.  In the

7   absence of such a class, Plaintiff cannot raise a § 1985 claim.

8          Because Plaintiff fails to allege additional facts from which a conspiracy can be plausibly

9   inferred under § 1985(3), the Court GRANTS Defendants' motion to dismiss Plaintiff's § 1985(3)

10  claims.  In addition, because Plaintiff "fail[ed] to cure deficiencies by amendments previously

11  allowed" and amendment would be futile, the Court dismisses the claims with prejudice.

12  *Carvalho*, 629 F.3d at 892–93.

### 4. IIED Claim

14         The Court previously declined to exercise supplemental jurisdiction over Plaintiff's state

15  law IIED claim because the Court dismissed all of the federal bases for jurisdiction.[8]  Plaintiff's

16  IIED claim is comprised of the conclusory allegations that Defendants' conduct was "extreme,

17  unreasonable and outrageous," that Defendants "intended or recklessly disregarded the foreseeable

18  risk that Plaintiff would suffer extreme emotional distress," and that "Plaintiff suffered severe

19  emotional distress, pain and suffering, fear, anxiety, embarrassment, discomfort and

20  humiliation . . . ."  FAC ¶ 79.

21         To allege a claim of intentional infliction of emotional distress under California law, a

22  plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of

23  causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

24  suffering severe or extreme emotional distress; and (3) actual and proximate causation of the

25  emotional distress by the defendant's outrageous conduct . . . . Conduct to be outrageous must be so

26  extreme as to exceed all bounds of that usually tolerated in a civilized community. The defendant

---

[8] The Court also declined to exercise supplemental jurisdiction over Plaintiff's Bane Act and FEHA claims.  As Plaintiff did not include those claims in the FAC, the Court does not reach those state law claims.

24

**United States District Court**
For the Northern District of California

1    must have engaged in conduct intended to inflict injury or engaged in with the realization that

2    injury will result." *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993) (internal

3    quotation marks and citations omitted).

4         Simply put, Plaintiff alleges insufficient facts to support his IIED claim against Defendants

5    Gayrard and Abramson.  Plaintiff does not allege facts showing his severe mental or emotional

6    distress.  The conclusory allegation that Plaintiff suffered emotional distress is insufficient.  *See*

7    *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1191–92 (S.D. Cal. 2010).  Even construing

8    Plaintiff's FAC liberally, the Court finds no facts showing a plausible claim that any individual

9    Defendant acted outrageously with the requisite intent to cause Plaintiff emotional distress.

10   Moreover, Defendants correctly argue that the only conduct Plaintiff has alleged is that the

11   individual Defendants denied his applications to SCILL, CLS, and the graduate studies programs.

12   Assuming the individual Defendants are responsible for Plaintiff's rejections, they are obligated to

13   deny admission to certain applicants as a function of their duties as university administrators.  In

14   *Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 756 (Ct. App. 1996), a California Court of

15   Appeal held that routine, necessary personnel management decisions such as hiring and firing,

16   even if improperly motivated, are not outrageous as a matter of law.  Another California Court of

17   Appeal applied this rationale to the university admissions context, holding that an allegedly race-

18   based admissions decision was not outrageous as a matter of law.  *See Regents of Univ. of Cal. v.*

19   *Superior Ct.*, No. A096423, 2002 WL 120818, at *3–6 (Cal. Ct. App. Jan. 30, 2002).  The *Regents*

20   *of University of California* Court concluded that the alleged improper motive for the decision did

21   "not alter the basic nature of the conduct alleged," and that an IIED claim requires outrageous

22   conduct, not an outrageous motive.  *Id.* at *5.  Any improper motive was properly the subject of a

23   discrimination claim, not an IIED claim.  *See id.* at *3.  Like in *Regents of University of California*,

24   Plaintiff here has failed to allege that "the decision to reject his application was implemented or

25   communicated to him in an outrageous manner."  *See id.*  Plaintiff has failed to allege any other

26   conduct by the Defendants and his IIED claim fails as a matter of law.

27        Accordingly, Plaintiff's IIED claim against the individual Defendants is dismissed with

28   prejudice.

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

IV.     **CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss as follows:

(1) The Court DENIES Defendants' motion to dismiss Plaintiff's Age Discrimination Act claim against the Board of Trustees;

(2) The Court GRANTS Defendants' motion to dismiss Plaintiff's retaliation, and Fourteenth Amendment equal protection and due process claims against the Board of Trustees with prejudice;

(3) The Court GRANTS Defendants' motion to dismiss Plaintiff's § 1985 claim against the Board of Trustees with prejudice;

(4) The Court GRANTS Defendants' motion to dismiss Plaintiff's Age Discrimination Act claim against the individual Defendants with prejudice;

(5) The Court DENIES Defendants' motion to dismiss Plaintiff's § 1983 retaliation claim against Defendants Abramson and Gayrard as related to the SCILL Program but GRANTS the motion to dismiss with prejudice as to the graduate studies program;

(6) The Court GRANTS Defendants' motion to dismiss Plaintiff's Fourteenth Amendment equal protection and due process claims against the Board of Trustees with prejudice;

(7) The Court GRANTS Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process claim against Defendant Abramson and Gayrard with leave to amend;

(8) The Court GRANTS Defendants' motion to dismiss Plaintiff's § 1985 claims against Defendants Abramson and Gayrard with prejudice;

(9) The Court GRANTS Defendants' motion to dismiss Plaintiff's IIED claims against the Defendants Abramson and Gayrard with prejudice.

As noted in footnotes 1, 3, and 6, the Court also dismisses the following new, unauthorized parties from Plaintiff's FAC: Sabine Rech, Michael Sneary, John Boothby, Katherine Wilkinson, and California State University.

Should Plaintiff elect to file a second amended complaint addressing the deficiencies with his due process claim against Defendants Gayrard and Abramson, Plaintiff shall do so within 14

26

United States District Court
For the Northern District of California

days of the date of this Order.  Plaintiff's failure to meet the 14-day deadline to file a second

amended complaint or failure to cure the deficiencies identified in this Order will result in a

dismissal with prejudice of Plaintiff's due process claim against Defendants Gayrard and

Abramson.

Plaintiff may not add new claims or parties without leave of the Court or stipulation by the

parties pursuant to Federal Rule of Civil Procedure 15.  Plaintiff should not include any claims

dismissed with prejudice in a second amended complaint.  Plaintiff may include Plaintiff's

surviving Age Discrimination Act claim against Defendant Board of Trustees and Plaintiff's

§ 1983 retaliation claim against Defendants Gayrard and Abramson.

**IT IS SO ORDERED.**

Dated: September 29, 2014

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No.: 13-CV-03400-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California