1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREGORY NICHOLAS STESHENKO,<br><br>Plaintiff,<br><br>v.<br><br>SUZANNE GAYRARD, et al.,<br><br>Defendants. | Case Nos.:13-CV-03400-LHK<br>      13-CV-04948-LHK<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. No. 73, 51 |
| GREGORY NICHOLAS STESHENKO,<br><br>Plaintiff,<br><br>v.<br><br>GERALDINE ALBEE, et al.,<br>Defendants. | |

Before the Court are Defendants' motions to dismiss Plaintiff Gregory Steshenko's Second Amended Complaints in both *Steshenko v. Gayrard*, No. 13-3400, and *Steshenko v. Albee*, No. 13-4948. As the briefing in both actions is identical, the instant order disposes of both motions. Pursuant to Civil Local Rule 7-1(b), the Court finds these motions suitable for disposition without oral argument and VACATES the hearings set for April 2, 2015. Having reviewed the

1

Case Nos.: 13-CV-03400-LHK; 13-CV-4948-LHK
ORDER GRANTING MOTIONS TO DISMISS

submissions of the parties, the record in these cases, and the relevant law, the Court hereby GRANTS Defendants' motions to dismiss Plaintiffs' actions with prejudice pursuant to 28 U.S.C. § 1915(e).

## I.   BACKGROUND

### A.   Factual Background

The Court begins by summarizing the factual background in *Steshenko v. Gayrard*, which involves Plaintiff's application to programs at San Jose State University. Plaintiff is a 52-year-old unemployed electrical engineer seeking to re-enter the job market through professional re-training. ECF No. 13-3400, Second Am. Compl. ("*Gayrard* SAC") ¶ 22. In addition to a Master of Science degree in Electrical Engineering, Plaintiff earned a Bachelor of Science degree in Biochemistry and Molecular Biology from the University of California, Santa Cruz, in 2010. *See id.*

On November 23, 2012, Plaintiff applied to the Clinical Laboratory Scientist ("CLS") Training Program at San Jose State University. *Id.* ¶ 28. The CLS Training Program is a one-year academic program combining theoretical training with an internship at a participating clinical laboratory. *Id.* ¶ 23. On January 25, 2013, Plaintiff was notified that his application was denied and that he would not be invited for an interview. *Id.* ¶ 30. According to Plaintiff, much younger applicants, in their 20s, with much more inferior academic credentials and work experience, were invited for interviews and subsequently admitted to the program. *Id.* Plaintiff alleges that he personally knew some of these applicants and observed how they "struggled" while taking the prerequisites for the program. *Id.* Plaintiff later raised these issues with the head of the CLS Training Program, Defendant Suzanne Gayrard. *Id.* However, Gayrard refused to explain the admission decision or to inform Plaintiff about the age statistics of the admitted applicants. *Id.* Accordingly, Plaintiff concluded that he was discriminated against on the grounds of age. *Id.* Plaintiff subsequently filed a complaint with the U.S. Department of Education Office of Civil Rights ("USDOE"). *Id.* ¶ 31.

On February 3, 2013, Defendant Tzvia Abramson, the head of the Stem Cell Internships in Laboratory Based Learning ("SCILL") Program, invited Plaintiff to apply to the SCILL Program.

2

United States District Court
Northern District of California

United States District Court
Northern District of California

1  *Id.* ¶ 32. The SCILL Program is a two-year Master of Science program with a year of theoretical

2  training and a year of an internship at a participating research laboratory. *Id.* ¶ 24. On February 28,

3  2013, Plaintiff applied to the SCILL Program. *Id.* ¶ 32.

4       According to Plaintiff, after Abramson contacted Gayrard and learned about Plaintiff's

5  complaint to the USDOE, Defendants Abramson, Gayrard, and other university employees formed

6  a conspiracy to retaliate against Plaintiff for his complaint. Specifically, the defendants

7  "communicated and agreed that Plaintiff should not be invited for the SCILL admissions interview

8  because of his complaints and his expressed intention to sue." *Id.* ¶ 33. On May 3, 2013,

9  Abramson notified Plaintiff that he was not selected as "a finalist for this round," but that Plaintiff

10  was on a waiting list for Fall 2013. *Id.* ¶ 34. Abramson also stated that she would not provide any

11  information about Plaintiff's ranking on that waiting list. *Id.* However, according to Plaintiff, there

12  was no such thing as a waiting list and the SCILL Program had been "struggling to find . . .

13  minimally qualified students willing to apply." *Id.* Plaintiff alleges that all of the admitted

14  applicants to the SCILL Program were young, and "their academic credentials were much inferior

15  to those of Plaintiff." *Id.*

16       On June 10, 2013, Plaintiff notified Gayrard that Plaintiff would file a lawsuit against

17  Gayrard. *Id.* ¶ 35. According to Plaintiff, "Defendants decided to retaliate further" by denying

18  Plaintiff's admission to graduate studies at San Jose State University's Department of Biological

19  Sciences. *Id.*

20       Plaintiff alleges that the CLS Training Program, the SCILL Program, and the participating

21  laboratories "heavily discriminate on the grounds of age." *Id.* ¶ 27. Plaintiff further alleges: "No

22  persons of the protected age have ever been admitted to either of [the CLS Training or the SCILL]

23  programs. The age discrimination is rampant." *Id.*

24       Plaintiff alleges that he exhausted his administrative remedies with the USDOE on June

25  29, 2013. *Id.* ¶ 7. Plaintiff also alleges that he filed "several timely administrative claims with

26  California State University Chancellor's Office." ECF No. 46 at 3. However, Plaintiff's claims

27

28  Case Nos.: 13-CV-03400-LHK; 13-CV-4948-LHK
    ORDER GRANTING MOTIONS TO DISMISS

were denied. *Id.* ¶ 8.

In *Steshenko v. Albee*, Plaintiffs alleges he suffered age discrimination in his application to San Francisco State University. On October 22, 2012, Plaintiff applied to the CLS Training Program at San Francisco State University. Second Am. Compl., ECF No. 45, ("*Albee* SAC") ¶ 22. On March 19, 2013, Plaintiff was notified that his application was denied due to his late submission of his transcript and that he would not be invited for an interview. *Id.* ¶ 23. On June 12, 2013, Plaintiff subsequently reapplied for the spring semester, to begin coursework in 2014. *Id.* ¶¶ 23–24. According to Plaintiff, sometime during July 2013 or August 2013, Defendant Albee and other university employees "assembled, communicated and finally decided that Plaintiff [was] not suitable for the CLS program because of his age, and therefore should not be invited to an admissions interview." *Id.* ¶ 25 On August 28, 2013, Plaintiff was notified that his application was denied because "he did not meet the criteria for selection into the CLS program." *Id.* ¶ 26. According to Plaintiff, much younger applicants, in their 20s, with much more inferior academic credentials and work experience, were invited for interviews and subsequently admitted to the program. *Id.* Accordingly, Plaintiff concluded that he was discriminated on the grounds of age. In making this conclusion, Plaintiff also alleges that "[n]o persons of the protected age have ever been admitted to . . . this program" and that "[t]he age discrimination is rampant." *Id.* ¶ 21.

Plaintiff alleges that he filed a timely administrative claim with the California State University Chancellor's Office. *Id.* ¶ 8. However, Plaintiff's claims were denied. *Id.* Plaintiff also alleges that he gave timely notices of the instant action to Defendants, the Secretary of Health and Human Services, and the Attorney General of the United States. *Id.* ¶ 9.

## B. Procedural Background

### 1. *Gayrard* Procedural Background

On July 22, 2013, Plaintiff filed his original Complaint against Defendants. ECF No. 1. On October 22, 2013, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). ECF No. 12. After the Court granted the parties' motions to extend time to file a response to the motion to dismiss, on January 23, 2014, Plaintiff filed an opposition. ECF No. 26. On January 24, 2014,

4

United States District Court
Northern District of California

Plaintiff filed an addendum to his opposition. ECF No. 28. On January 31, 2014, Defendants filed a reply. ECF No. 29. The Court held a hearing on May 15, 2014. ECF No. 36. Plaintiff filed a supplemental letter brief on May 16, 2014. ECF No. 35.

On May 20, 2014, the Court granted Defendants' motion to dismiss. ("May 20, 2014 Order"), ECF No. 42. In the order, the Court granted with leave to amend Defendants' motion to dismiss Plaintiff's claims against the Board of Trustees; Plaintiff's § 1983 retaliation claim against Gayrard and Abramson; and Plaintiff's § 1985(3) claim against Gayrard and Abramson. May 20, 2014 Order at 20. The Court also granted with prejudice Defendants' motion to dismiss Plaintiff's § 1983 claim based on due process and equal protection violations against Gayrard and Abramson; Plaintiff's Age Discrimination Act claim against Gayrard and Abramson; and Plaintiff's Age Discrimination in Employment Act claim against Gayrard and Abramson. *Id.* Finally, the Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and thus granted Defendants' motion to dismiss Plaintiff's state law claims—FEHA claim, Bane Act claims, and IIED claim. *Id.* at 18–20.

On May 31, 2014, Plaintiff filed a First Amended Complaint ("FAC") against Defendants. ECF No. 45. On June 1, 2014, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). ("MTD"), ECF No. 49. On June 29, 2014, Plaintiff filed a response. ECF No. 51. On July 10, 2014, Defendants filed a reply. ECF No. 53.

On September 29, 2014, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 60. The Court dismissed with prejudice all of Plaintiff's claims against Defendant Board of Trustees with the exception of Plaintiff's Age Discrimination Act claim. The Court granted leave to amend only with respect to Plaintiff's due process claims against Defendants Abramson and Gayrard. As to the remainder of Plaintiff's claims against the individual Defendants, the Court denied Defendants' motion to dismiss Plaintiff's § 1983 retaliation claim as related to the SCILL program, but dismissed with prejudice Plaintiff's other claims. The Court also dismissed Defendants Rech, Sneary, Boothby, and Wilkinson, as Plaintiff

Case Nos.: 13-CV-03400-LHK; 13-CV-4948-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

had failed to secure Court approval or a stipulation to add new parties to the action.

On October 27, 2014, Plaintiff filed a motion for leave to file a motion for reconsideration of the Court's September 29, 2014 order dismissing Defendants Rech, Sneary, Boothby, and Wilkinson. ECF No. 65. The Court granted Plaintiff's motion for reconsideration on December 17, 2014. ECF No. 72.

On October 13, 2014, Plaintiff filed his SAC. ECF No. 64. Defendant Board of Trustees filed an answer on October 27, 2014. ECF No. 67. The individual Defendants filed a motion to dismiss Plaintiff's due process claim that same day. ECF No. 66. Plaintiff filed an opposition on November 11, 2014, ECF No. 68, and Defendants filed their reply on November 18, 2014, ECF No. 69. On February 25, 2015, the Court granted Defendants' motion, and dismissed Plaintiff's due process claim with prejudice. ECF No. 76.

### 2. *Albee* Procedural Background

On October 24, 2013, Plaintiff filed an original Complaint. No. 13-4948, ECF No. 1. On March 26, 2014, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). ECF No. 14. That same day, Defendants amended the motion to dismiss. ECF No. 15. After the Court granted Plaintiff's motion to extend time to file a response to the motion to dismiss, on April 17, 2014, Plaintiff filed an opposition. ECF No. 20. On April 23, 2014, Defendants filed a reply. ECF No. 21. The Court held a hearing on May 15, 2014. Plaintiff filed a supplemental letter brief on May 16, 2014. ECF No. 23.

On May 20, 2014, the Court granted Defendant's motion to dismiss. ECF No. 29. In the order, the Court granted with leave to amend Defendants' motion to dismiss all of Plaintiff's claims against the Board of Trustees and Plaintiff's § 1985(3) claim against Albee. ("May 20, 2014 Order"), ECF No. 29 at 17. The Court also granted with prejudice Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process and equal protection claims against Albee; Plaintiff's Age Discrimination Act claim against Albee; and Plaintiff's Age Discrimination in Employment Act claim against Albee. May 20, 2014 Order at 17. Finally, the Court declined to

6

exercise supplemental jurisdiction over Plaintiff's remaining state law claims and thus granted Defendants' motion to dismiss Plaintiff's state law claims—FEHA claim, Bane Act claims, and IIED claim. May 20, 2014 Order at 17.

On May 31, 2014, Plaintiff filed an Amended Complaint against Defendants. ECF No. 31. Plaintiff filed a corrected First Amended Complaint on June 29, 2014. ("FAC"), ECF. No. 34. On June 16, 2014, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). ("MTD"), ECF No. 33, which Plaintiff opposed on June 29, 2014, ("Opp'n"), ECF No. 35. On July 10, 2014, Defendants filed a reply. ("Reply"), ECF No. 36.

On September 29, 2014, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 41. The Court dismissed with prejudice all of Plaintiff's claims against Defendant Board of Trustees with the exception of Plaintiff's Age Discrimination Act claim. The Court dismissed with leave to amend Plaintiff's due process claim against Defendant Albee and dismissed with prejudice the remainder of Plaintiff's claims against Defendant Albee.

On October 14, 2014, Plaintiff filed his SAC. ECF No. 45. Defendant Board of Trustees filed its answer on October 27, 2014. ECF No. 47. That same day, Defendant Albee filed a motion to dismiss Plaintiff's due process claim. ECF No. 46. Plaintiff filed an opposition on November 11, 2014, ECF No. 48, and Albee filed a reply on November 18, 2014, ECF No. 49. On February 25, 2015, the Court granted with prejudice Albee's motion to dismiss Plaintiff's due process claim.

### 3.  Instant Motions to Dismiss

On December 19, 2014, Defendants filed the instant, identical motions to dismiss pursuant to 28 U.S.C. § 1915(e)(2). No. 13-3400, ECF No. 73; No. 13-4948, ECF No. 51. Plaintiff filed identical oppositions, No. 13-3400, ECF No. 77; No. 13-4948, ECF No. 55, and Defendants filed identical replies, No. 13-3400, ECF No.81; No. 13-4948, ECF No. 60. Defendants also filed requests for judicial notice, No. 13-3400, ECF Nos. 76, 83; No. 13-4948, ECF Nos. 54, 61, and motions for leave to file a supplemental reply brief, No. 13-3400, ECF Nos. 90; No. 13-4948, ECF

United States District Court
Northern District of California

7

1   No. 68.[1] Plaintiff filed oppositions to Defendants' motions for leave to file a supplemental reply

2   brief, No. 13-3400, ECF Nos. 91; No. 13-4948, ECF No. 69.

3   **II. LEGAL STANDARD**

4       "The clerk of each district court shall require the parties initiating any civil action, suit or

5   proceeding in such court . . . to pay a filing fee of $350 . . . ." 28 U.S.C. § 1914(a). Section

6   § 1915(a)(1) provides:

7           [A]ny court of the United States may authorize the commencement,
            prosecution or defense of any suit, action or proceeding, civil or
8           criminal, or appeal therein, without prepayment of fees or security
            therefor, by a person who submits an affidavit that includes a
9           statement of all assets such [person] possesses that the person is
            unable to pay such fees or give security therefor.
10

11  28 U.S.C. § 1915(a)(1).

12      The determination of whether a plaintiff is indigent and therefore unable to pay the filing

13  fee falls within the court's sound discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858

14  (9th Cir. 1991), *reversed on other grounds*, 506 U.S. 194 (1993). A party need not be completely

15  destitute to be eligible for in forma pauperis ("IFP") status. *Adkins v. E.I. DuPont de Nemours &*

16  *Co.*, 335 U.S. 331, 339–40 (1948). The affidavit supporting an IFP motion is sufficient if it alleges

17  facts showing that the plaintiff, because of poverty, cannot pay or give security for court costs and

18  still be able to provide herself and her dependents with "the necessities of life." *Id.* at 339.

19      However, "the court shall dismiss the case at any time if the court determines that . . . the

20  allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A).1 *See Igbinadolor v. TiVo, Inc.*, No.

21

22  _____

    [1] The Court GRANTS Defendants' unopposed requests for judicial notice, No. 13-3400, ECF Nos.
23  76, 83; No. 13-4948, ECF Nos. 54, 61, and has taken notice of the adjudicative facts contained
    therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (matters of public
24  record); *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (court records); *see also*
    Fed. R. Evid. 201(d).
25      The Court also GRANTS Defendants' motions for leave to file a supplemental reply brief.
    No. 13-3400, ECF Nos. 90; No. 13-4948, ECF No. 68. As discussed in the Court's order denying
26  Plaintiff's administrative motions to seal the exhibits submitted in support of his oppositions to the
    instant motions, Plaintiff failed to provide copies of the exhibits to defense counsel prior to the
27  deadline for filing a reply. *See* ECF No. 74. As those exhibits are central to Plaintiff's opposition,
    the Court grants Defendants' motions.

28

8

08-CV-2580, 2009 WL 3253946, at *1 (N.D. Ga. Oct.6, 2009) ("Dismissal of the case is required upon a showing that the allegation of poverty is untrue," and "[t]he only discretion the court has is whether to dismiss the case with or without prejudice."); *Oquendo v. Geren*, 594 F. Supp. 2d 9, 11 (D.D.C. 2009) ("[D]ismissal is mandatory in the face of untrue allegations of poverty."); *Berry v. Locke*, No. 1:08cv697 (JCC), 2009 WL 1587315, at *5 (E.D. Va. June 5, 2009) ("Courts that have considered [28 U.S.C. § 1915(e)(2) ] have held that dismissal is mandatory when a court finds that allegations of poverty in an IFP application are untrue; the court also has the discretion to dismiss the case with prejudice."); *Bell v. Dobbs Int'l Serv.*, 6 F.Supp.2d 863, 864 (E.D. Mo.1998) ("As is explicitly addressed in the statutory language, the fact that plaintiff paid the filing fee after her IFP application was denied does not preclude application of the provision to dismiss her case based on a false allegation of poverty.").

Where the applicant has knowingly provided inaccurate information on his or her IFP application, the dismissal may be with prejudice. *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002); *Attwood v. Singletary*, 105 F.3d 610, 612–13 (11th Cir. 1997); *Romesburg v. Trickey*, 908 F.2d 258, 260 (8th Cir. 1990); *Thompson v. Carlson*, 705 F.2d 868, 869 (6th Cir. 1983).

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' actions with prejudice based on two apparent misrepresentations in Plaintiffs' IFP applications in these cases: (1) Plaintiff's failure to disclose his ownership of a home with substantial equity; and (2) Plaintiff's failure to accurately disclose his marital status and any income flowing therefrom. As the Court finds that Plaintiff knowingly failed to disclose his ownership of a home, the Court does not reach Defendants' second argument.

The Court begins by describing Plaintiff's prior IFP applications in other actions. In 2004, Plaintiff filed an IFP application in *Steshenko v. Christey*, No. 04-3626, ECF No. 2. In that August 25, 2004 application, Plaintiff disclosed that he was married, and that his spouse had a gross income of $2,111 a month. *Id.* Plaintiff also disclosed the fact that he owned a house with an

Case Nos.: 13-CV-03400-LHK; 13-CV-4948-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

1   estimated market value of $369,000 and a monthly mortgage of $1450. *Id.* On November 10,

2   2004, District Judge Fogel denied Plaintiff's IFP application noting that Plaintiff and his wife had

3   a combined income of $30,732, a balance of over $5000 in their bank account, and owned a home

4   worth $369,000. ECF No. 7. Plaintiff then paid his filing fee on November 19, 2004. The Court

5   granted a motion to dismiss with prejudice in *Christey* on May 20, 2005. ECF No. 54.

6          In 2009, Plaintiff filed an IFP application in *Steshenko v. McKay*, No. 09-5543. ECF No. 2.

7   In that November 23, 2009 IFP application, Plaintiff checked "No," to the question "Are you

8   married?" and left blank the spaces for a spouse's name, employment, and monthly salary or

9   wages. *Id.* Plaintiff also checked "No," to the question "Do you own or are you buying a home?"

10  and left blank the spaces for estimated market value and amount of mortgage. *Id.* On November

11  24, 2009, Magistrate Judge Seeborg granted Plaintiff's IFP application. Following an eight-day

12  jury trial and a jury verdict in favor of the *McKay* defendants, the Court entered the judgment on

13  April 1, 2015. ECF Nos. 998, 1002. Plaintiff has since appealed that verdict. ECF No. 1000.

14         In 2012, Plaintiff filed an IFP application in the Eastern District of California, in a motion

15  to quash related to *Steshenko v. McKay*. *See* No. 12-mc-00062-MCE-GGH, ECF No. 2. In that

16  August 9, 2012 IFP application, Plaintiff circled "yes" to the question "Do you own any real

17  estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of

18  value." *Id.* Under "If 'Yes,' describe the property and state its value," Plaintiff wrote only "Car

19  Scion XB 2005, present value $2500.00." *Id.* In describing his unemployment status, Plaintiff

20  wrote "I'm a long-term unemployed, and presently surviving on the food stamps and the monthly

21  loan from my family. The loan is to be repaid when I find a job." *Id.*

22         In 2013, Plaintiff filed the two IFP applications at issue in the instant order. Both IFP

23  applications are identical. Question 5 of the IFP applications asks "Do you own or are you buying

24  a home?" Plaintiff checked "No" and wrote "N/A" in the spaces for "Estimated Market Value"

25  and "Amount of Mortgage." Plaintiff also checked "No," for "Are you married?" and wrote "N/A"

26  for spouse's name, place of employment, and monthly salary or income.

27

28

Case Nos.: 13-CV-03400-LHK; 13-CV-4948-LHK
ORDER GRANTING MOTIONS TO DISMISS

United States District Court
Northern District of California

Here, the Court concludes that Plaintiff knowingly and intentionally omitted material information from four IFP applications, two of which are presently before this Court. Plaintiff declared, under penalty of perjury, that the information provided in his IFP applications was true and correct. In his 2009 IFP application in *McKay*, 2012 IFP application in the Eastern District of California, 2013 IFP application in *Gayrard*, and 2013 IFP application in *Albee*, Plaintiff failed to disclose that he owned a home. Plaintiff had previously disclosed his ownership of the property at 3030 Marlo Court, Aptos, California, and its then-market value of $369,000 in his 2004 IFP application in *Christey*. In District Judge Fogel's denial of Plaintiff's IFP application in *Christey*, Judge Fogel specially referenced Plaintiff's ownership of a $369,000 home as indicative of Plaintiff's ability to pay the filing fee. Following that initial IFP application and denial, Plaintiff has omitted any mention of the property he owns in his subsequent four IFP applications.

As a threshold matter, the Court concludes that Plaintiff continues to own the property at 3030 Marlo Court, Aptos, California, which is also Plaintiff's current residence. Defendants have submitted public records evidencing Plaintiff's ownership of the property at 3030 Marlo Court. *See* RJN, Exh. 8. According to Santa Cruz County Records, Plaintiff first recorded a grant deed naming, "as his sole and separate property," the residence on August 10, 1999. ECF No. 54-8. That same day, Plaintiff recorded a deed of trust to secure a note in the amount of $139,000. *Id.* In July 2004, Plaintiff granted a deed of trust to GMAC Mortgage to secure a 30 year note in the amount of $130,000, which fully reconveyed the 1999 deed of trust. *Id.* As of 2004, Plaintiff estimated the value of the home at $369,000. Defendants also submitted an estimated value of the property at $733,797 as of December 12, 2014. According to Defendants, "[e]ven if the property appreciated as much as 10% from 2013 when the complaint was filed, to December 2014, the value in 2013 was $667,088." Mot. at 5.

In opposition to Defendants' motions, Plaintiff does not affirmatively disclaim any ownership interest in the property, but instead refers to the fact that he transferred an interest in the property to his mother in 2009 "as surety for the family loan that she provided to him to put him

11

back to work." Opp. at 2. Plaintiff submitted an unrecorded transfer grant deed showing that Plaintiff conveyed the property to his mother on November 20, 2009. The conveyance, however, is marked as "exempt from Documentary Transfer Tax" because "[t]his conveyance is to secure a debt, R & T 11921." Plaintiff further argues that his mother further transferred "the interest in the property" to other family members "after her personal ability to loan money to Plaintiff was exhausted." The Court finds this explanation troubling and insufficient.

Here, whether or not Plaintiff transferred an interest in the Aptos property to his mother, he still retained ownership of the property and was obligated to disclose that ownership on four separate IFP applications. Plaintiff failed to do so. Even assuming the property was worth the same amount in 2009, 2012, and 2013 as it was in 2004, Plaintiff had valued the property at $369,000. Had Plaintiff properly disclosed his ownership of a property worth hundreds of thousands of dollars, this Court would have denied Plaintiff's IFP applications in *Gayrard* and *Albee*. The Court explicitly noted Plaintiff's *lack* of home ownership as a factor weighing in favor of granting IFP status. *See* No. 13-3400, ECF No. 5. Plaintiff therefore misrepresented material information to this Court.

Moreover, the Court finds that Plaintiff fully comprehends that he retains ownership of the Aptos property. As discussed above, Plaintiff does not ever actually disclaim his ownership of the Aptos property. Instead, Plaintiff describes a "transfer" of an "interest" as "surety for the family loan[s]" that he has received over the last several years to pay for living expenses. *See* No. 13-3400, ECF No. 77, ¶ 4. Plaintiff refers to his mother's "interest in the property," which she has since purportedly transferred to other family members. As Defendants note, however, the unrecorded transfer deed is marked as "exempt from Documentary Transfer Tax" because "[t]his conveyance is to secure a debt, R & T 11921." The reference to R& T 11921 is to California Revenue and Taxation Code § 11921, which provides that real estate transfer taxes do not apply to "any instrument in writing given to secure a debt." Under California law, Plaintiff's conveyance of an interest in his property as surety for a debt created a mortgage, and there was no transfer of

12

United States District Court
Northern District of California

ownership. *See, e.g.*, *Jensen v. Friedman*, 79 Cal. App. 2d 494, 498–99 (Ct. App. 1947). Based on Plaintiff's representations and argument, the Court concludes that Plaintiff knowingly created a mortgage and retained his ownership interest in the property.

Furthermore, Plaintiff has referred to "family loans" covering his living expenses in both IFP applications at issue in the instant order, as well as the 2009 *McKay* IFP application and the 2012 Eastern District of California IFP application. In the Eastern District of California IFP application, Plaintiff explained "I'm a long-term unemployed, and presently surviving on the food stamps and the monthly loan from my family. The loan is to be repaid when I find a job." No. 12-mc-00062, ECF No. 2. In the instant IFP applications, Plaintiff again stated that his monthly expenses are "partially [met] by a family loan extended by the [sic] family members." Plaintiff is presumably referring to continued family loans that he is expected to repay once he finds employment. That Plaintiff is expected to repay these family loans, and that he has affirmatively stated this expectation is further evidence of Plaintiff's understanding that he did not transfer ownership of his Aptos property in exchange for monthly payments from his family, but rather solely as security for these loans.

The Court is also troubled by Plaintiff's lack of explanation for his material omissions to this Court. To the extent Plaintiff might have believed that he was not obligated to disclose his ownership of the Aptos property because of the 2009 mortgage created in favor of his mother, the Court finds this excuse would be insufficient. In *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547–48 (7th Cir. 1998) (per curiam), the Seventh Circuit affirmed the district court's dismissal with prejudice under § 1915(e)(2) where the plaintiff failed to disclose that he owned a home with $14,000 worth of equity. In *Mathis*, the plaintiff claimed that he "did not disclose the equity in his home because he did not own it 'free and clear.'" *Id.* at 547. As in *Mathis*, the Court concludes that such a claim would be unreasonable. Here, Plaintiff has neither argued that he does not retain ownership of a home worth hundreds of thousands of dollars, nor provided any basis for the conclusion that Plaintiff is somehow unaware of his interest in the property. The IFP applications

13

United States District Court
Northern District of California

1    ask simple, straightforward questions, and Plaintiff is not only college educated, but also has

2    advanced degrees. Plaintiff has also felt comfortable providing "additional statements" on IFP

3    applications and could have explained that he had transferred an interest in the property to his

4    mother. *See, e.g.*, No. 9-5543, ECF No. 2 (2009 IFP application with "Additional Statement of

5    Applicant" typed at end of form). Instead, Plaintiff chose to omit any mention of the property

6    altogether.

7        In sum, the Court finds that Plaintiff intentionally and knowingly omitted material

8    information about his financial status. Plaintiff's failure to disclaim his ownership of the property,

9    his description of the transfer as "surety for a debt," his invocation of Cal. Rev. & Tax. Code

10   § 11291, and Plaintiff's prior statement that he is expected to repay the "family loans" that he is

11   receiving, all indicate to this Court that Plaintiff fully understands that he retains an ownership

12   interest in the property. As Plaintiff has made untrue allegations of poverty, the Court has no

13   choice but to dismiss these actions. *See Igbinadolor*, 2009 WL 3253946, at *1; *Oquendo*, 594 F.

14   Supp. 2d at 11; *Berry*, 2009 WL 1587315, at *5.

15       The only remaining issue is whether this dismissal should be with prejudice. To the

16   Court's knowledge, Plaintiff has filed five separate IFP applications. Plaintiff disclosed his

17   ownership of the Aptos property and its market value in only one of those five IFP applications,

18   which was also the only IFP application which the Court denied. Since that denial, Plaintiff has

19   filed for IFP status four times and omitted any mention of his Aptos property. The Court finds that

20   Plaintiff's repeated, material omissions and misrepresentations constitute a fraud on the Court.

21   *See, e.g.*, *Emrit v. Yahoo! Inc.*, No. 13-5951, 2014 WL 3841015, at *3 (N.D. Cal. Aug. 4, 2014)

22   (omission of $31,000 inheritance a "fraud on the Court" that warranted dismissal with prejudice

23   under § 1915(e)(2)); *Mathis*, 133 F.3d at 547–48. Plaintiff is well-educated and is an experienced

24   litigant. Not only had Plaintiff previously filed a complete, correct IFP application in 2004, but

25   over the last decade Plaintiff has filed dozens of motions, several complaints, and represented

26   himself in an eight-day jury trial. Plaintiff does not claim ignorance or innocent mistake, and in

27

28

14

light of the 2004 IFP application and Plaintiff's significant experience before the Court, such a claim would ring hollow.

The Court therefore exercises its discretion to dismiss these actions with prejudice. *See Hoskins v. Dart*, 633 F.3d 541, 543–44 (7th Cir. 2011); *Thomas*, 288 F.3d at 306–308; *Thompson*, 705 F.2d at 869. Here, Plaintiff has knowingly, repeatedly omitted material information on his IFP applications. "[W]here one attempts to 'defraud the government' with a perjurious IFP affidavit, dismissal with prejudice may be the only effective sanction." *Mullins v. Hallmark Data Systems, LLC*, 511 F. Supp. 2d 928, 940 (N.D. Ill. 2007) (quoting *Thomas*, 288 F.3d at 306–07). Plaintiff knowingly misrepresented his financial status in no less than four separate IFP applications, two of which are presently before this Court. These representations are substantial and material. Whether or not the Aptos property is worth $369,000 or $667,088, Plaintiff had substantial equity in his home at the time he filed his IFP applications in 2009, 2012, and 2013. In making the conscious decision to omit that information in order to attain IFP status, Plaintiff committed a deliberate fraud on the Court. In *Gayrard* and *Albee*, the Court explicitly relied on Plaintiff's lack of home ownership as a reason to grant Plaintiff's IFP applications. In light of Plaintiff's deliberate concealment of material information, the Court concludes that a dismissal with prejudice "is the only appropriate sanction." *Emrit*, 2014 WL 3841015, at *3.

## IV. CONCLUSION

For the reasons stated above, the Court hereby grants Defendants' motions to dismiss with prejudice.

The Clerk shall close the case files.

**IT IS SO ORDERED.**

Dated: April 1, 2015

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

15

Case Nos.: 13-CV-03400-LHK; 13-CV-4948-LHK
ORDER GRANTING MOTIONS TO DISMISS